The PINAL CREEK GROUP, consisting of Cyprus Miami Mining Corporation, Inspiration Consolidated Copper Company, and Magma Copper Company, Plaintiff–Appellee,

v.

NEWMONT MINING CORP.; Occidental Petroleum Corporation; Canadianoxy Offshore Production Company; Atlantic Richfield Company; Phelps Dodge Corporation, Defendants–Appellants.

No. 96–16334.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 12, 1996.

Decided July 2, 1997.

Shane R. Swindle, Dalton, Gotto, Samson & Kilgard, Phoenix, AZ, for Newmount Min. Corp.

Michael D. Young, Tiffany Hedgpeth, McClintock, Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, Los Angeles, CA, for Phelps Dodge Corp.

Michael J. Gallagher, Davis, Graham & Stubbs, Denver, CO, for ARCO.

Michael P. Berman, Kim E. Williamson, Lowe & Berman, Phoenix, AZ, for Occidental Petroleum and Canadianoxy.

Nicholas J. Wallwork, Muchmore & Wallwork, Phoenix, AZ, for Plaintiff–Appellee.

Jeremy Heep, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, for amicus curiae United States.

Tamara L. Huddleston, Assistant Attorney General, Phoenix, AZ, for amicus curiae State of Arizona.

Craig J. Reece, Assistant City Attorney, Hugh H. Marthinsen, Squire, Sanders & Dempsey, Phoenix, AZ, for amicus curiae City of Phoenix, AZ.

Barbara R. Goldberg, Assistant City Attorney, Scottsdale, AZ, for amicus curiae City of Scottsdale, AZ.

Karen S. Gaylord, Assistant City Attorney, Tempe, AZ, for amicus curiae City of Tempe, AZ.

Before: GOODWIN, FERGUSON and TASHIMA, Circuit Judges.

TASHIMA, Circuit Judge:

This case requires us to decide whether the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601–9675 ("CERCLA"), provides a party who is partly liable for the cleanup of a hazardous waste site with a claim against other potentially responsible parties

("PRPs") for the joint and several recovery of the totality of its cleanup costs. We answer in the negative.

## I. BACKGROUND

"CERCLA was a response by Congress to the threat to public health and the environment posed by the widespread use and disposal of hazardous substances. Its purpose was to ensure the prompt and effective cleanup of waste disposal sites, and to assure that parties responsible for hazardous substances bore the cost of remedying the conditions they created." *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1455 (9th Cir.1986).

Plaintiff is composed of three mining companies who have engaged in the voluntary cleanup of the Pinal Creek Drainage Basin, a hazardous waste site located in Arizona. In order to coordinate cleanup efforts, plaintiff companies formed the Pinal Creek Group (collectively, the "Pinal Group"). The Pinal Group commenced this action in an effort to recover all (or, alternatively, some) of its cleanup costs from other PRPs.

Although the Pinal Group has admitted that it is partly responsible for a portion of these cleanup costs, it has asserted a claim for the totality of these costs and seeks to impose joint and several liability on defendants for that amount. The Pinal Group contends that defendants would then be entitled to assert a contribution claim against it (the Pinal Group) to recover that portion of the costs for which the Pinal Group would be responsible.

All defendants moved to dismiss the claim that sought to impose on them joint and several liability for all response costs incurred by the Pinal Group. The district court denied defendants' motion to dismiss. However, it certified its order for an immediate interlocutory appeal, pursuant to 28 U.S.C. § 1292(b). We granted the petition for interlocutory review. Thus, we have jurisdiction under 28 U.S.C. § 1292(b), and we reverse.

1. Section 107(a) sets forth specifically who is a PRP liable under that provision. The Pinal Group concedes that its members are PRPs under § 107(a). Our use of the term PRP, and our opinion today, does not cover those "person[s] otherwise liable" under § 107(a) who can establish they are not liable by virtue of the defenses set forth in § 107(b). *See* 42 U.S.C. § 9607(b).

## II. DISCUSSION

### A. Overview

▮▮▮▮ The district court's interpretation of a statute is a question of law which we review *de novo*. *Parravano v. Babbitt*, 70 F.3d 539, 543 (9th Cir.1995), *cert. denied*, — U.S. —, 116 S.Ct. 2546, 135 L.Ed.2d 1066 (1996). Our appellate jurisdiction under 28 U.S.C. § 1292(b) applies to the order certified to us and is not "tied to the particular question formulated by the district court." *Yamaha Motor Corp., U.S.A. v. Calhoun*, — U.S. —, —, 116 S.Ct. 619, 623, 133 L.Ed.2d 578 (1996). As the Seventh Circuit has stated, "it is the order that is before us on appeal, rather than the questions themselves." *Rumpke of Ind., Inc. v. Cummins Engine Co.*, 107 F.3d 1235, 1239 (7th Cir. 1997) (citing *Yamaha* ).

Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), authorizes suits against certain "statutorily defined 'responsible parties' to recover costs incurred in cleaning up hazardous waste disposal sites." *Mardan*, 804 F.2d at 1455. Under § 107, each such PRP[1] shall be liable for:

> (A) all costs ... incurred by the United States Government or a State or an Indian tribe ... [and]
>
> (B) any other necessary costs of response incurred by any other person....

42 U.S.C. § 9607(a)(4)(A) & (B).

Because CERCLA originally did not explicitly recognize a claim for contribution, Congress amended it in 1986 to clarify and confirm that CERCLA did incorporate such a claim. *Key Tronic Corp. v. United States*, 511 U.S. 809, 814–18, 114 S.Ct. 1960, 1965–66, 128 L.Ed.2d 797 (1994); *United Tech. Corp. v. Browning–Ferris Indus., Inc.*, 33 F.3d 96, 100–01 (1st Cir.1994). Section 113(f) was thus enacted, explicitly recognizing and regulating contribution claims under CERCLA.[2]

2. (1) Contribution

Any person may seek contribution from any other person who is liable or potentially liable under section [107(a)], during or following any civil action under section [106] or under section [107(a)]. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall

The Pinal Group argues that, under § 107, it is entitled to recover, jointly and severally, the totality of its response costs from defendants (the "Newmont PRPs"). The Pinal Group relies on the language of § 107 which makes all PRPs liable for "any . . . necessary costs of response incurred by any other person." 42 U.S.C. § 9607(a)(4)(B).

The Newmont PRPs counter that, even if the Pinal Group is free to assert a claim under § 107, their liability to the Pinal Group would be for contribution under the combined effect of §§ 107 and 113. Accordingly, the Newmont PRPs argue that the liability of each of them would be several, and not joint, and would extend only to each party's own equitable share of the costs incurred by the Pinal Group. We agree.

▆▆▆▆ Because all PRPs are liable under the statute, a claim by one PRP against another PRP necessarily is for contribution. A PRP's contribution liability will correspond to that party's equitable share of the total liability and will not be joint and several.[3] CERCLA simply does not provide PRPs who incur cleanup costs with a claim for the joint and several recovery of those costs from other PRPs. As discussed below, our holding today is mandated by the text, structure, and legislative history of §§ 107 and 113, as well as by precedent.

### B. Analysis

▆▆▆▆ The text of § 107 leads to the conclusion that only a claim for contribution lies between PRPs. Under the literal language of § 107, the Pinal Group, as a PRP, is partly responsible for its cleanup costs and, as "any other person" under § 107, can also hold other PRPs liable for a portion of those same costs. This duality is best implemented by permitting a PRP who has incurred cleanup costs to assert only a contribution claim against other PRPs. Viewed in that way, the Pinal Group is responsible only for that portion of the liability which it equitably should bear anyway, while being entitled to hold other PRPs severally liable for each of their, respective, equitable shares of the total costs. That is the essence of a claim for contribution which, albeit implicitly, is imbedded in the text of § 107.

This conclusion—that § 107 implicitly incorporates a claim for contribution—is unremarkable; most courts had so held even before Congress settled the issue by enacting § 113(f). *Key Tronic*, 511 U.S. at 809, 814–15 & 816 n. 7, 114 S.Ct. at 1960, 1965 & 1965 n. 7 (recognizing that "numerous cases" interpreted § 107 "to impliedly authorize such a cause of action"); *United Tech.*, 33 F.3d at 100 (same); *Mardan*, 804 F.2d at 1457 n. 3 (same).

The legislative history behind § 113(f) also supports the conclusion that, in enacting that provision, Congress was only confirming and clarifying an existing claim for contribution under § 107. H.R.Rep. No. 99–253, pt. 3, at 18–19 (1985), *reprinted in* 1986 U.S.C.C.A.N. 3038, 3041 (section 113 "clarifies the availability of judicial review regarding contribution claims"); S.Rep. No. 99–11, at 43 (1985) (bill "clarifies and confirms existing law" by adding contribution provision); *see also United Tech.*, 33 F.3d at 100–01 (citing extensively to legislative history in support of same proposition).

▆▆▆▆ Together, §§ 107 and 113 provide and regulate a PRP's right to claim contribution from other PRPs. *Key Tronic*, 511 U.S. at 814–18, 114 S.Ct. at 1965–66 (remedies in §§ 107 and 113 described as "similar and

---

be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section [106] or section [107].
(2) Settlement
A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.
42 U.S.C. § 9613(f)(1) & (2).

**3.** We do not foreclose the possibility that a court could find, after balancing the equities as required by § 113, that a particular PRP's equitable share of the total liability should be zero.

somewhat overlapping"). The contours and mechanics of this right are now governed by § 113. Put another way, while § 107 created the right of contribution, the "machinery" of § 113 governs and regulates such actions, providing the details and explicit recognition that were missing from the text of § 107.

Two other circuits, as well as a number of district courts, have explicitly agreed with our conclusion that §§ 107 and 113 work together—the first section creating the claim for contribution between PRPs, and the second qualifying the nature of that claim. *New Castle County v. Halliburton NUS Corp.,* 111 F.3d 1116, 1122 (3d Cir.1997) ("section 113 does not in itself create any new liabilities; rather, it confirms the right of a[PRP] under section 107 to obtain contribution from other [PRPs]"); *United Tech.,* 33 F.3d at 102 n. 10; *United States v. Bay Area Battery,* 895 F.Supp. 1524, 1533 (N.D.Fla.1995) ("section 113(f) qualifies the broad cause of action created in section 107(a)"); *Boeing Co. v. Cascade Corp.,* 920 F.Supp. 1121, 1132 (D.Or. 1996) ("[u]nder CERCLA, where a responsible party brings a Section 107 action, Section 113 applies") (citing *In re Dant & Russell, Inc.,* 951 F.2d 246, 249 (9th Cir.1991)). The relationship between the two sections has been aptly described, thusly:

> Section 113(f), however, does not create the right of contribution—rather the source of a contribution claim is section 107(a). Under CERCLA's scheme, section 107 governs liability, while section 113(f) creates a mechanism for apportioning that liability among responsible parties.

*United States v. ASARCO, Inc.,* 814 F.Supp. 951, 956 (D.Colo.1993) (citations omitted).

Our interpretation of the statute is also consistent with our own precedent, *Dant & Russell.* As relevant here, the teaching of *Dant & Russell* is that § 113 should be applied to claims brought by a PRP, whenever possible. 951 F.2d at 249. In that case, a PRP, Burlington Northern, asserted a claim against another PRP for all of the response costs it incurred in cleaning up a particular site. Burlington Northern argued that, because its claim was asserted under § 107, the court could not apportion liability, but instead had to grant it the totality of its re-

sponse costs. *Id.* at 247 & 249. We expressly rejected that argument. *Id.* at 249. Instead, we treated Burlington Northern's claim as one for contribution and applied § 113(f) to it. *Id.* Accordingly, we upheld an award for approximately one-half of Burlington Northern's incurred cleanup costs. *Id.* In short, *Dant & Russell* forecloses a PRP from asserting a CERCLA claim for the totality of its response costs.

The Pinal Group attempts to distinguish *Dant & Russell* by first noting that only two PRPs were involved in that case. It then argues that *Dant & Russell* recognized a claim by a PRP for the totality of its costs under § 107 and then apportioned liability on the basis of an unasserted contribution counterclaim brought by the defendant PRP.

The argument does not find support in our opinion. Perhaps recognizing as much, the Pinal Group points to a footnote in Burlington Northern's reply brief in that case. In that footnote, Burlington Northern argued that we could only apportion liability by first recognizing its claim as one for the totality of its costs under § 107 and then relying on our "equitable power" to recognize an "unasserted counterclaim in contribution" by the defendant PRP. However, by apportioning liability through the direct application of § 113(f) to Burlington Northern's purportedly-pure § 107 claim, we clearly chose not to rely on that rationale. In fact, the Pinal Group's citation of that footnote strengthens the argument, supported by the plain language of the opinion, that we consciously rejected Burlington Northern's (and the Pinal Group's) contention that a PRP is entitled to bring an action to recover all of its response costs under § 107.

The majority of courts faced with this issue, in contexts identical to the case at bench, have also concluded that a PRP is not entitled to recover all its response costs from other PRPs, but instead is limited to asserting a claim for contribution. *SC Holdings, Inc. v. A.A.A. Realty Co.,* 935 F.Supp. 1354, 1362–65 (D.N.J.1996) (citing *Dant & Russell* and collecting other cases); *see, e.g., T H Agric. & Nutrition Co. v. Aceto Chem. Co.,* 884 F.Supp. 357, 360–362 (E.D.Cal.1995); *Kaufman v. Unisys Corp.,* 868 F.Supp. 1212,

1214–16 (N.D.Cal.1994); *Ciba–Geigy Corp. v. Sandoz Ltd.*, Civ. No. 92–4491, 1993 WL 668325 at *4–*7 (D.N.J. Jun.17, 1993); *see also Stearns & Foster Bedding Co. v. Franklin Holding Corp.*, 947 F.Supp. 790, 798–801 (D.N.J.1996); *Boyce v. Bumb*, 944 F.Supp. 807 (N.D.Cal.1996).

■ As is the case traditionally in contribution actions between tortfeasors, CERCLA's claim for contribution creates several-only liability among PRPs. Accordingly, the Pinal Group is foreclosed from imposing joint and several liability on any of the Newmont PRPs, even with respect to any amount that may exceed the Pinal Group's own equitable share of the cleanup costs. A contrary approach is not supported by CERCLA's text, is inconsistent with the traditional doctrine of contribution, entails a significant risk of producing unfair results, and runs the risk of creating procedural chaos.

The "joint and several" approach would be contrary to the statutory scheme created by CERCLA. If a group of defendant-PRPs is held jointly and severally liable for the total response costs incurred by a claimant-PRP, reduced by the amount of claimant-PRP's own share, those defendant-PRPs would end up absorbing all of the cost attributable to "orphan shares"—those shares attributable to PRPs who either are insolvent or cannot be located or identified. There is no statutory support for such a rule, which would immunize the claimant-PRP from the risk of orphan-share liability and would restrict substantially the ability of courts to apportion costs equitably pursuant to § 113(f). Immunizing PRPs who have directly paid for cleanup operations from the risk of sharing the cost associated with orphan shares would undermine the ability of courts to allocate costs between all PRPs "using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1).[4] Under § 113(f)(1), the cost of orphan shares is distributed equitably among all PRPs, just as cleanup costs are.

Moreover, even a modified rule, in which the joint and several liability of defendant-PRPs is reduced by that portion of the orphan shares which the claimant-PRP should equitably bear, could result "in a chain reaction of multiple, and unnecessary lawsuits." *Ciba–Geigy*, 1993 WL 668325 at *7. Such a joint and several approach would "guarantee[ ] inefficiency, potential duplication, and prolongation of the litigation process in a CERCLA case." *T H Agric.*, 884 F.Supp. at 361.

Our holding today is consistent with statements by the Supreme Court, and by five other circuits, recognizing in contexts similar to this one, that a CERCLA claim by a PRP against another PRP is necessarily for contribution. *Key Tronic*, 511 U.S. at 818 n. 11, 114 S.Ct. at 1966 n. 11 (implying that claim by a PRP under § 107 would be "for contribution against those treated as joint tortfeasors"); *United Tech.*, 33 F.3d at 99 n. 8 & 100 ("a party who himself is liable [can] only seek ... contribution rather than complete indemnity"); *New Castle County*, 111 F.3d at 1120 (agreeing with "conclusion reached by [other] circuits" that an "action brought by a [PRP] is by necessity a section 113 action for contribution"); *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir.1996); *United States v. Colorado & E. R.R. Co.*, 50 F.3d 1530, 1536 (10th Cir. 1995); *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 672–73 (5th Cir.1989).[5]

---

**4.** Of course, in equitably allocating responsibility between PRPs, courts are free to consider, together with other relevant factors, the fact that a PRP has itself engaged in cleanup efforts and the circumstances surrounding those efforts. 42 U.S.C. § 9613(f)(1); H.R.Rep. No. 99–253, pt. 3, at 19 (1985), *reprinted in* 1986 U.S.C.C.A.N. 3038, 3042 (in apportioning costs, courts may consider "the degree of cooperation of the parties with government officials to prevent any harm to public health or the environment"); *Central Me. Power Co. v. F.J. O'Connor Co.*, 838 F.Supp. 641, 646–47 (D.Me.1993) ("degree of cooperation with government officials to prevent

any harm to ... the environment" is a "very important" factor "in the contribution analysis").

**5.** The Seventh Circuit has adopted an exception to the general rule that a PRP is limited to a contribution action under §§ 107 and 113, which excepts PRPs who have not polluted the site in any way. *Rumpke of Ind.*, 107 F.3d at 1241. Because the Pinal Group consists of parties who are admittedly partly responsible for the contamination at issue here, that exception would not apply to this case. We, therefore, do not reach that issue.

In addition, three circuits have expressly rejected an argument nearly identical to the one advanced by the Pinal Group. In essence, those courts were faced with attempts by "working PRPs" to circumvent the contribution provisions of § 113.[6] As discussed in more detail below, in those cases, the working PRP asserted a claim to apportion costs between all PRPs. However, to avoid the effect of § 113, the working PRP asserted that its claim was not really a "contribution" claim controlled by § 113, but rather a "cost recovery" claim under § 107 which, as such, was not subject to the limiting provisions of § 113.

Likewise, the Pinal Group seeks to avoid the effect of § 113. By trying to obtain the totality of its costs immediately (subject to subsequent contribution counterclaims), it seeks to avoid the delay (and burden-of-proof rules) implicit in § 113(f)'s mechanism for the equitable allocation of costs among PRPs. In addition, by arguing for joint and several liability, the Pinal Group attempts to avoid bearing any part of the cost attributable to orphan shares; however, § 113(f) mandates the equitable allocation of all costs among PRPs, without establishing any special per se rules.

Both the Seventh and Tenth Circuits rejected a working PRP's attempt to avoid the effect of § 113(f)(2) by rejecting the argument that the PRP's claim was governed exclusively by § 107. *Colorado & E. R.R.,* 50 F.3d at 1534–36; *Akzo Coatings, Inc. v. Aigner Corp.,* 30 F.3d 761, 764 (7th Cir.1994) (citing *Dant & Russell* ). Section 113(f)(2) provides that a party who has settled with the government is immune from "contribution" suits regarding matters addressed in the settlement. 42 U.S.C. § 9613(f)(2). The working PRPs in *Colorado & E. R.R.* and *Akzo* tried unsuccessfully to hold liable a PRP who had settled with the government by arguing that § 113(f)(2) did not apply because their claim was for "cost recovery" under § 107, not for "contribution" under § 113(f). *Colorado & E. R.R.,* 50 F.3d at 1536; *Akzo,* 30 F.3d at 764.

Similarly, in *United Technologies,* 33 F.3d at 101–03, the First Circuit rejected a working PRP's attempt to avoid the statute of limitations that applies to contribution actions. Section 113(g)(3) establishes a three-year statute of limitations for "contribution" actions, while § 113(g)(2) generally establishes a six-year statute of limitations for "cost recovery" actions brought under § 107. 42 U.S.C. § 9613(g). The PRP in *United Technologies* argued that only claims seeking apportionment of reimbursed costs are "contribution" claims subject to the shorter period of § 113(g)(3) and that, since its claim sought apportionment of first-instance costs, it really was asserting a cost recovery action subject to the longer limitation period of § 113(g)(2). As did the Seventh and Tenth Circuits, the First Circuit rejected this artificial distinction between working and non-working PRPs and applied the three-year statute of limitations to the working PRP's claim. *United Tech.,* 33 F.3d at 101–03.

Finally, we address three additional arguments advanced by the Pinal Group. First, it contends that our holding would hamper CERCLA's policy of promoting rapid and voluntary environmental responses by private parties to the threat posed by hazardous waste sites. We reject this argument because it is based on policy considerations which we cannot consider in light of the controlling text, structure, and logic of CERCLA and of our own precedent in *Dant & Russell.*

In any event, we are not convinced that the policy of promoting rapid voluntary cleanups would be undermined to any significant degree by our holding. As discussed above, courts may take into account the degree of cooperation shown by a PRP when equitably allocating liability among PRPs under § 113(f)(1). *See* 42 U.S.C. § 9613(f)(1); H.R.Rep. No. 99–253, pt. 3, at 19 (1985), *reprinted in* 1986 U.S.C.C.A.N. 3038, 3042; *Central Me. Power,* 838 F.Supp. at 646–47 ("degree of cooperation" is a "very impor-

---

**6.** A "working PRP" is a convenient label for a PRP that actually conducts cleanup operations, as opposed to one that reimburses a third party for the cost of the latter's cleanup efforts. The First Circuit has referred to costs incurred by a non-working PRP as "reimbursed costs" and to costs incurred by a working PRP as "first instance costs." *United Tech.,* 33 F.3d at 97.

tant" factor "in the contribution analysis"). In addition, other incentives exist for PRPs to conduct cleanup operations promptly. For example, a PRP who (like the Pinal Group) conducts business at a contaminated site would, by engaging in cleanup operations itself, protect its on-going operations and be better able to control its cleanup costs, than if it waited for the government to intervene.

Second, the Pinal Group argues that our holding would result in the absence of a statute of limitations for a contribution action by a PRP who incurs response costs without governmental action in the form of a settlement, an order, a consent decree, or a judgment. The Pinal Group notes that § 113(g)(3) establishes a three-year limitations period for contribution actions, but that the provision uses as triggering dates events which would not occur when the cleanup proceeds without prior coercive government action. It then argues that the other limitations provision would not apply to such claims either because they are contribution claims and § 113(g)(2) applies only to the "recovery of costs referred to in section [107]." 42 U.S.C. § 9613(g)(2).

No statute of limitations issue is before us in this case and we decline the Pinal Group's invitation to opine on it indirectly. Suffice it to say that the federal courts are often faced with determining which statute of limitations governs claims created by Congress. *See, e.g., Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (borrowing analogous state statute of limitations for 42 U.S.C. § 1983 claim); *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (borrowing federal statute of limitations for claims of breach of collective bargaining agreement). The court directly faced with the issue must determine whether § 113(g)(3), § 113(g)(2), or some other statute should apply. *See*

*United Tech.,* 33 F.3d at 99 n. 8 (expressing uncertainty as to which of the two periods would apply in this context). However, the need eventually to choose which statute of limitations governs contribution claims certainly should not drive our interpretation of the substantive provisions of CERCLA.[7]

■ Third, the Pinal Group argues that, if not allowed to bring a "cost recovery" claim for the totality of its cleanup costs, it would be left with no claim to assert against the Newmont PRPs. The Pinal Group asserts it would not be entitled to assert a contribution claim under § 113(f) against the Newmont PRPs because it has not incurred any liability which would trigger such an action. Specifically, it contends that the requisite liability only attaches if the government incurs response costs, arguing that before then, no liability exists under § 107(a), and that the Pinal Group's status as a PRP, by itself, does not give rise to a claim for contribution.

■ We reject this argument because it is wrong as well as internally inconsistent. As the Newmont PRPs have conceded, the Pinal Group is entitled to assert a contribution claim here. Although it is true that PRP status, by itself, does not generate liability, the Pinal Group ignores the "necessary costs of response incurred by [it] consistent with the national contingency plan." 42 U.S.C. § 9607(a). Prior to its expenditure, the Pinal Group was not yet liable because no one, not the government, not any other PRPs or any non-PRP private parties, had yet incurred any costs under § 107.

However, once the Pinal Group undertook those "necessary costs of response," it, along with all PRPs associated with the Pinal Creek site, became partly responsible for those costs.[8] This resulted in a situation where all PRPs, including the Pinal Group, bear some responsibility for those cleanup

---

7. We also note that the Pinal Group's argument is based on the incorrect premise that a contribution action is not brought under § 107. Thus, the choice presented by this premise, between a contribution action created and governed exclusively by § 113, on the one hand, and an independent "cost recovery action" available to working PRPs exclusively under § 107, on the other, is a false one. As we have concluded above, a PRP's contribution action finds implicit

recognition in § 107; § 113 merely regulates its implementation.

8. In admitting that the Newmont PRPs would have a contribution claim against it, should it be able to recover its entire cleanup costs, the Pinal Group acknowledges explicitly that it is partly responsible for the cleanup costs incurred by it.

costs. Under § 107, the Pinal Group's responsibility for its own equitable share of the cleanup costs is generated independently of any liability that might arise from response costs incurred by the government. *Kaufman*, 868 F.Supp. at 1214–16 (contribution action recognized in circumstances identical to those present here); *Ciba–Geigy*, 1993 WL 668325 at *4–*7 (same); *Cf. United Tech.*, 33 F.3d at 99 n. 8 (suggesting that "a PRP who spontaneously initiates a cleanup without governmental prodding might be able to pursue an implied right of action for contribution").

 The argument also is inconsistent with the Pinal Group's own position that, after recovering its cleanup costs from the Newmont PRPs under § 107, the Newmont PRPs would have a contribution counterclaim against the Pinal Group under § 113(f). The Pinal Group fails to explain how contribution can lie in one direction, but not the other, or how it, while not liable before recovering from the Newmont PRPs, becomes liable after said recovery. By its nature, contribution only occurs between co-liable parties and flows in either direction, depending on which co-liable party has paid more than its fair share. Satisfaction of the cost recovery claim by the Newmont PRPs cannot make the Pinal Group liable (and thus subject to a contribution counterclaim) if it previously were not liable (and thus not able to assert a contribution claim).

Of course, this inconsistency disappears when it is recognized that the Pinal Group initially does have a contribution claim under §§ 107 and 113. *Kaufman*, 868 F.Supp. at 1214–16 (contribution action recognized in circumstances identical to those present in instant case); *Ciba–Geigy*, 1993 WL 668325 at *4–*7 (same).

### III. CONCLUSION

 Because a claim asserted by a PRP under § 107 requires the application of § 113, a PRP is limited to a contribution claim governed by the joint operation of

§§ 107 and 113. Therefore, we hold that, under CERCLA, a PRP does not have a claim for the recovery of the totality of its cleanup costs against other PRPs, and a PRP cannot assert a claim against other PRPs for joint and several liability.

The judgment of the district court, denying defendants' motion to dismiss plaintiff's "First Claim for Relief," is therefore reversed, and the case is remanded with instructions to grant that motion and for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**[9]

---

9. The district court also denied a motion filed by some of the defendants for judgment on the pleadings as to plaintiff's First Claim for Relief. Because we conclude that this claim should have been dismissed, it is unnecessary to address the denial of the motion for judgment on the pleadings as to that claim.