**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES KOTROUS, INDIVIDUALLY AND
DOING BUSINES AS THE MATTRESS
FACTORY,
               *Plaintiff-Appellee,*

    v.

GOSS-JEWETT COMPANY OF
NORTHERN CALIFORNIA, INC.; et al.,
               *Defendants,*

    and

BAYER CROPSCIENCE, INC.,
               *Defendant-Appellant,*

EDWARD ANSELMO,
               *Defendant-Appellee.*

No. 06-15162
D.C. No.
CV 02-1520 FCD

Appeal from the United States District Court
for the Eastern District of California
Frank C. Damrell, District Judge, Presiding

ADOBE LUMBER, INC., a California
corporation,
               *Plaintiff-Appellee,*

    v.

F. WARREN HELLMAN; WELLS
FARGO BANK NA, as Trustees of
Trust A created by the Estate of
Marco Hellman,
               *Defendants-Appellants.*

No. 06-16019
D.C. No.
CV 05-1510 WBS

OPINION

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Argued and Submitted
October 18, 2007—Pasadena, California

Filed April 17, 2008

Before: Alex Kozinski, Chief Judge, A. Wallace Tashima,
and M. Margaret McKeown, Circuit Judges.

Opinion by Judge Tashima

**COUNSEL**

Jacqueline L. McDonald, Somach, Simmons & Dunn, Sacramento, California, for plaintiff-appellee James Kotrous.

John D. Edgcomb, San Francisco, California, for defendant-appellant Bayer CropScience, Inc.

Jeffory J. Scharff, Sacramento, California, for defendant-appellee Edward Anselmo.

Robert L. Wainess, Bartko, Zankel, Tarrant & Miller, San Francisco, California, for plaintiff-appellee Adobe Lumber, Inc.

Thomas M. Donnelly, Heller Ehrman LLP, San Francisco, California, for defendants-appellants F. Warren Hellman and Wells Fargo Bank, N.A.

**OPINION**

TASHIMA, Circuit Judge:

We are required to consider the continued viability of *Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298 (9th Cir. 1997), in light of the Supreme Court's most recent precedent addressing the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675 ("CERCLA"). Sections 107 and 113(f) of CERCLA, 42 U.S.C. §§ 9607 and 9613, "allow private parties to recover expenses associated with cleaning up contaminated sites." *United States v. Atl. Research Corp.*, 127 S. Ct. 2331, 2333 (2007). In *Atlantic Research*, the Supreme Court held that § 107(a) provides "so-called potentially responsible parties (PRPs) . . . with a cause of action to recover costs from other PRPs," *id.* at 2334, whereas § 113 provides an action for contribution. In so holding, the Court undermined *Pinal Creek*'s holding that § 107 entitles PRPs to seek only contribution, not cost recovery, from other PRPs. To the extent, therefore, that *Pinal Creek* conflicts with *Atlantic Research*, we conclude that *Pinal Creek* has been overruled.

This opinion addresses two separate appeals, in separate actions, seeking recovery of costs associated with the cleanup of hazardous waste sites.[1] In the first appeal, James Kotrous sued numerous defendants, including Bayer CropScience, Inc., seeking contribution under CERCLA for costs he had incurred in cleaning soil and groundwater contamination on land he owned. The district court denied Bayer's motion to dismiss Kotrous' claim under CERCLA § 107 for

---

[1]These appeals were consolidated for oral argument with two other CERCLA cases, *Goodrich Corp. v. United States Dep't of Defense*, No. 05-56694, and *City of Rialto v. United States Dep't of Defense*, No. 05-56749. *Goodrich* and *Rialto* are addressed in a separate memorandum disposition, filed concurrently with this opinion. We decide these cases, *Kotrous* and *Adobe*, together because they present the same issue.

contribution. It then granted Bayer's motion for certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

In the second appeal, Adobe Lumber, Inc., the owner of contaminated land, sued the owners of a dry cleaning business run on the property, as well as prior landowners, chemical and equipment manufacturers, and the City of Woodland, for contribution for costs Adobe had incurred in dealing with the contamination. The district court denied the defendants' motion to dismiss for failure to state a claim. *Adobe Lumber, Inc. v. Hellman*, 415 F. Supp. 2d 1070 (E.D. Cal. 2006). The district court subsequently certified its order for appeal. We agreed to hear both interlocutory appeals pursuant to 28 U.S.C. § 1292(b).

## BACKGROUND[2]

### I.  Kotrous

Since October 1995, Kotrous has owned land in Sacramento, California, and operated a business called "The Mattress Factory" on the site. Prior to 1995, the land was owned by numerous defendants.

Goss-Jewett Company operated a dry cleaner supply business on the property from approximately 1970 to 1996. During that period, it stored and distributed the solvent perchloroethylene ("PCE") and other hazardous substances. Defendant Stauffer Chemical Company and its successors, which includes Bayer, supplied the PCE. Stauffer accidentally released PCE into the soil and groundwater while making its deliveries, resulting in contamination of the property.

---

[2]Because of the procedural posture of the cases, the facts are taken from the pertinent complaints and construed in the light most favorable to the non-moving parties. *Deveraturda v. Globe Aviation Sec. Servs.*, 454 F.3d 1043, 1046 (9th Cir. 2006).

In February 2000, the California Regional Water Quality Control Board ("RWQCB") sent Goss-Jewett a letter requesting that it prepare and submit a work plan for assessment of the site. Goss-Jewett refused to do so. In November 2001, the RWQCB issued a Cleanup and Abatement Order requiring Goss-Jewett to investigate and clean the soil and groundwater at the site. Kotrous was directed to conduct the work if Goss-Jewett failed to do so. When Goss-Jewett failed to act, Kotrous incurred costs performing site characterization and investigation, and identification and investigation of PRPs.

Kotrous then commenced this action. His First Amended Complaint ("FAC") included a claim for contribution under § 107(a) of CERCLA for costs "Kotrous has incurred and will incur" in responding to the contamination. He also requested declaratory relief under § 113(g) "on liability for response costs or damages," and alleged various state law causes of action.

Bayer filed a motion for judgment on the pleadings, which the district court denied. After an unsuccessful motion for reconsideration, Bayer filed a motion for certification under 28 U.S.C. § 1292(b) for immediate appeal of the issue of whether Kotrous, as a PRP, could request contribution under § 113(f) without first being sued under § 106 or § 107(a). The district court granted the motion and we granted the petition for interlocutory appeal.

## II. Adobe Lumber

Adobe is the owner of the Woodland Shopping Center in Woodland, California (the "Site"). Over the years, the Site has had a succession of owners: Marco Hellman owned the property from 1971 until his death in 1973; his estate (the "Hellman Estate") owned the property from 1973 until 1976. F. Warren Hellman ("Hellman"), Marco's son, was the trustee of two trusts created by the Hellman Estate and owned the property from 1976 until 1979. As co-trustee to one of the trusts,

Wells Fargo Bank also owned the site during that period. The shopping center was owned by various other owners until Adobe purchased the property in 1998.

Between 1974 and November 2001, all of the owners leased part of the property to Harold and Geraldine Taecker (the "Taeckers"), who owned and operated a dry cleaning facility on the property. The Taeckers used PCE, produced by several manufacturer-defendants, as a cleaner during that time. Throughout their dry cleaning operations, the Taeckers released and disposed of PCE on the Site. A faulty sewer line also caused discharge of PCE and resultant contamination of the Site.

In August 2001, Adobe voluntarily examined the Site to see whether the Taeckers' long-time dry cleaning business had affected the soil and groundwater. After discovering elevated levels of chemical pollutants, Adobe reported the contamination to the RWQCB and the County Environmental Health Department. The RWQCB began working with the Taeckers and Adobe to create a work plan for the investigation of soil and groundwater contamination at the Site. During this process, Adobe incurred costs investigating the contamination at the Site.[3] A variety of legal actions followed, culminating in this lawsuit.

Adobe filed suit in the district court alleging several federal claims, including claims under the Resource Conservation and Recovery Act, 42 U.S.C. § 6972, and §§ 107(a) and 113(g) of CERCLA. Adobe's FAC also asserted state environmental claims and common law property and tort claims. As to the CERCLA claims at issue in this appeal, Adobe sought to recover costs that it had incurred or would incur in complying

---

[3]Adobe has not alleged that it already spent any money to remediate the contamination at the Site. At the time the Second Amended Complaint was filed, the RWQCB had not yet issued a final Cleanup and Abatement Order.

with the national contingency plan through implied contribution under § 107(a). It also requested "contribution . . . for all or a portion of past, present and future costs incurred in response to the release or threatened release of hazardous substances at the Site[ ]" under § 113(g). The defendants filed a motion to dismiss the complaint for failure to state a claim.

The district court denied the motion to dismiss Adobe's claim for contribution under CERCLA.[4] *Adobe Lumber*, 415 F. Supp. 2d at 1079. The court noted that the combined effect of the Supreme Court's decision in *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157 (2004), and existing Ninth Circuit precedent would be to prevent Adobe from recovering under either § 107 or § 113 of CERCLA. 415 F. Supp. 2d at 1077. Nevertheless, it had "difficulty imagining that the Ninth Circuit would prevent PRPs from pursuing contribution claims for clean up costs incurred voluntarily." *Id.* at 1078. Noting that several CERCLA cases sharing the same issue had reached the Ninth Circuit on appeal, the district court denied the motion to dismiss and stayed discovery in the case. *Id.* at 1079.

## STANDARDS OF REVIEW

The district court's interpretation of a statute is reviewed de novo. *Pinal Creek*, 118 F.3d at 1300. Similarly, the district court's grant of judgment on the pleadings is reviewed de novo. *Ventress v. Japan Airlines*, 486 F.3d 1111, 1114 (9th Cir. 2007). "On review of a judgment on the pleadings, '[t]he appellate court must accept all material allegations in the complaint as true and construe them in the light most favorable to [the non-moving party].' " *Deveraturda*, 454 F.3d at

---

[4]The district court granted the defendants' motion to dismiss several state claims in the complaint as time barred and denied the motion to dismiss by one defendant, who argued that it was not a liable party under CERCLA. *Adobe Lumber*, 415 F. Supp. 2d at 1079-83. Those issues are not before us in this appeal.

1046 (quoting *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004)) (alterations in original). The district court's dismissal for failure to state a claim is reviewed de novo. *Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066, 1072 (9th Cir. 2006), *cert. denied*, 128 S. Ct. 858 (2008).

## DISCUSSION

**[1]** "CERCLA is a comprehensive statute that grants the President broad power to command government agencies and private parties to clean up hazardous waste sites." *Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994). CERCLA § 107(a) "authorizes suits against certain 'statutorily defined "responsible parties" to recover costs incurred in cleaning up hazardous waste disposal sites.' " *Pinal Creek*, 118 F.3d at 1300 (quoting *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1455 (9th Cir. 1986) (in turn quoting 42 U.S.C. § 9607(a))). Section 107, "the 'cost recovery' section of CERCLA," sets forth four types of PRPs. *Cooper*, 543 U.S. at 161. The classes include "the owner and operator of . . . a facility," "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of," and "any person who . . . arranged for disposal or treatment . . . of hazardous substances . . . at any facility." 42 U.S.C. § 9607(a)(1)-(3). Such PRPs

shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of

assessing such injury, destruction, or loss resulting from such a release; and

(D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

*Id.* § (a)(4)(A)-(D).

**[2]** "After CERCLA's enactment in 1980, litigation arose over whether . . . a private party that had incurred response costs, but that had done so voluntarily and was not itself subject to suit, had a cause of action for cost recovery against other PRPs" under § 107. *Cooper*, 543 U.S. at 161. "Various courts held that § 107(a)(4)(B) . . . authorized such a cause of action." *Id.* (citing cases). Also, as originally enacted, CERCLA did not provide an express cause of action for contribution. *Id.* at 162; *Pinal Creek*, 118 F.3d at 1300. Litigation accordingly ensued over the question of "whether a private entity that had been sued in a cost recovery action (by the Government or by another PRP) could obtain contribution from other PRPs." *Cooper*, 543 U.S. at 162. The district courts "almost unanimously found that § 107 contained an implied cause of action for contribution." *E.I. DuPont de Nemours & Co. v. United States*, 508 F.3d 126, 132 (3d Cir. 2007).

Congress amended CERCLA in the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub. L. No. 99-499, § 113, 100 Stat. 1613 (1986), creating an express cause of action for contribution in CERCLA § 113, 42 U.S.C. § 9613. Section 113 provides, in pertinent part, as follows:

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be

brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

42 U.S.C. § 9613(f)(1).

In *Pinal Creek*, we held that § 113 merely "confirm[ed] and clarif[ied]" the existing claim for contribution that most courts had found to be implied by § 107. *Pinal Creek*, 118 F.3d at 1301. We concluded that "§§ 107 and 113 work together — the first section creating the claim for contribution between PRPs, and the second qualifying the nature of that claim." *Id.* at 1302. That is, "section 107 governs liability, while section 113(f) creates a mechanism for apportioning that liability among responsible parties." *Id.* (quoting *United States v. ASARCO, Inc.*, 814 F. Supp. 951, 956 (D. Colo. 1993)).

**[3]** The plaintiff, Pinal Creek Group, was composed of three mining companies that had engaged in the voluntary cleanup of a hazardous waste site. It sought to recover the totality of its costs from other PRPs, asserting that the other PRPs would then be entitled to seek contribution from it (Pinal Creek) for its portion of the costs. Reasoning that the language of § 107 only allowed a PRP to "hold other PRPs liable for a portion of" its cleanup costs, we concluded that "a PRP is not entitled to recover all its response costs from other PRPs, but instead is limited to asserting a claim for contribution." *Id.* at 1301, 1302. We reasoned "that a CERCLA claim by a PRP against another PRP is necessarily for contribution." *Id.* at 1303 (citing cases). We therefore held that "a PRP does not have a claim for the recovery of the totality of its cleanup

costs against other PRPs, and a PRP cannot assert a claim against other PRPs for joint and several liability." *Id.* at 1306.

We addressed CERCLA contribution again in *Western Properties Service Corp. v. Shell Oil Co.*, 358 F.3d 678 (9th Cir. 2004). Western Properties sought " 'recovery of response costs and contribution, under § 107 and § 113 respectively,' " primarily from oil companies, after spending several million dollars on an environmental response to petroleum waste pits on property it had purchased. *Id.* at 682. We agreed with the oil companies that "the district court erred in granting recovery against them jointly and severally for 100% of the cleanup expense," because, pursuant to *Pinal Creek*, Western Properties, as a PRP, could bring only a claim for contribution. *Id.* at 687-89.

*Western Properties* also answered a question not decided in *Pinal Creek* — whether a non-polluting PRP landowner may sue under § 107(a) for full joint and several recovery. We reasoned that CERCLA already provided a statutory exception for innocent parties in § 101(35), and that allowing non-polluting PRP landowners to recover under both § 107(a) and § 113 would allow such landowners to "evade the § 113(f)(1) requirement that factors for allocation be 'equitable,' " and potentially allow them double recoveries. *Id.* at 689-91. We therefore "reject[ed] a non-polluting PRP landowner exception beyond the one provided by § 101(35)," and held that "Western Properties, as a PRP, [was] limited to bringing a contribution action governed by § 113." *Id.* at 692.

In December 2004, the Supreme Court decided *Cooper*, holding that "a private party who has not been sued under § 106 or § 107(a)" may not "obtain contribution under § 113(f)(1) from other liable parties." *Cooper*, 543 U.S. at 160-61. *Cooper* therefore abrogated our prior assumption that a PRP could sue for contribution without being subject to suit

under § 106 or § 107. *See W. Props.*, 358 F.3d at 683 & n.18 (citing cases allowing such actions).**⁵**

*Cooper* involved sites in Texas that had been contaminated by both Aviall Services, Inc., and Cooper Industries, Inc. Aviall cleaned up the properties under the supervision of the State of Texas and subsequently sought contribution, pursuant to § 113(f)(1), from Cooper for response costs. Aviall asserted that it had "framed its claim in the manner compelled by Fifth Circuit precedent holding that a § 113 claim is a type of § 107 claim." *Cooper*, 543 U.S. at 164 n.4. The Fifth Circuit, sitting en banc, held that "§ 113(f)(1) allows a PRP to obtain contribution from other PRPs regardless of whether the PRP has been sued under § 106 or § 107." *Id.* at 165. The Supreme Court reversed. *Id.*

The Court reasoned that allowing a contribution action at any time, "regardless of the existence of a § 106 or § 107 action," would render superfluous the explicit language of the statute that " '[a]ny person may seek contribution . . . during or following any civil action under section 9606 of this title or under section 9607(a) of this title.' " *Id.* at 166 (quoting 42 U.S.C. § 9613(f)(1)). The Court construed the last sentence of § 113(f)(1), the so-called saving clause,**⁶** as "rebut[ting] any presumption that the express right of contribution provided by

---

**⁵**A preliminary question in *Western Properties* was whether the district court had jurisdiction to award damages against the oil companies, where "there was no prior civil action against Western Properties pursuant to CERCLA §§ 106 or 107." *W. Props.*, 358 F.3d at 683. Western Properties had asserted "both a § 107(a) response-cost recovery and a § 113(f)(1) contribution claim," and the oil companies had counterclaimed against Western Properties under both sections. *Id.* at 685. We thus held that the district court had jurisdiction because the contribution action was pursued during a civil action under § 107(a). *Id.*

**⁶**The clause provides that "[n]othing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title." 42 U.S.C. § 9613(f)(1).

the enabling clause is the exclusive cause of action for contribution available to a PRP," but not as creating a cause of action. *Id.* at 166-67. Because Aviall had never been subject to an action under § 106 or § 107, the Court held that it had no claim for contribution under § 113(f)(1). *Id.* at 168.

Aviall contended that, in the alternative to a contribution claim under § 113(f)(1), it could recover costs under § 107(a)(4)(B), even though it was a PRP, but the Court declined to consider the issue because the district court and the Fifth Circuit had not addressed it. *Id.* The Supreme Court accordingly left open the questions of whether Aviall could pursue cost recovery under § 107 and whether Aviall had an implied right to contribution under § 107. *Id.* at 170.

In *Atlantic Research*, the Supreme Court answered the first question left open in *Cooper*: "whether § 107(a) provides . . . PRPs . . . with a cause of action to recover costs from other PRPs." *Atl. Research*, 127 S. Ct. at 2334. The Court held that it does. *Id.*

[4] The Court examined the structure of § 107(a)(4) and concluded that "the plain language of [§ 107(a)(4)(B)] authorizes cost-recovery actions by any private party, including PRPs." *Id.* at 2336. The Court explained that "the remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action 'to persons in different procedural circumstances.' " *Id.* at 2338 (quoting *Consol. Edison Co. v. UGI Utils., Inc.*, 423 F.3d 90, 99 (2d Cir. 2005), *cert. denied*, 127 S. Ct. 2995 (2007)). CERCLA § 113(f) grants an explicit right to contribution to PRPs "with common liability stemming from an action instituted under § 106 or § 107(a)." *Id.* Section § 107(a), by contrast, "permits recovery of cleanup costs but does not create a right to contribution. A private party may recover under § 107(a) without any establishment of liability to a third party," but a PRP may recover only the costs it has incurred in cleaning a site, not the costs of a settlement agreement or a court judgment. *Id.*

A PRP cannot choose remedies, but must proceed under § 113(f)(1) for contribution if the party has paid to satisfy a settlement agreement or a court judgment pursuant to an action instituted under § 106 or § 107.[7] *Id.* If, however, the private party has itself incurred response costs, it may seek recovery under § 107. *Id.*

**[5]** The holding in *Atlantic Research* that a PRP may sue for cost recovery under § 107 undermines our holding in *Pinal Creek* that an action between PRPs is necessarily for contribution.[8] Although "a three-judge panel may not itself overrule a prior decision of the court, 'where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority,' three-judge panels 'should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled.' " *Ortega-Mendez v. Gonzales*, 450 F.3d 1010, 1019 (9th Cir. 2006) (quoting *Miller v. Gammie*, 335 F.3d 889, 893, 900 (9th Cir. 2003) (en banc)). We therefore conclude that *Pinal Creek*'s holding that an action between PRPs is necessarily for contribution has been overruled.[9] *Cf. E.I. DuPont*, 508 F.3d at 135 (concluding that *Atlantic Research* overruled the Third Cir-

---

[7]The Court declined to address whether § 107(a) "contains an additional implied right to contribution for PRPs who are not eligible for relief under § 113(f)." *Atl. Research*, 127 S. Ct. at 2339 n.8.

[8]*Western Properties*' holding, in reliance on *Pinal Creek*, that a non-polluting PRP is limited to a contribution action under § 113, *W. Props.*, 358 F.3d at 692, also has been undermined.

[9]In view of the Supreme Court's express refusal to decide whether § 107 contains an implied right to contribution, *see Atl. Research*, 127 S. Ct. at 2339 n.8 (declining to address whether § 107(a) contains an implied right to contribution), we decline to reconsider this assumption in *Pinal Creek*. Moreover, although the parties asked us at oral argument to address *Pinal Creek*'s holding that a PRP cannot assert a claim against other PRPs for joint and several recovery of its cleanup costs, that question is not before us. We note that, in *Atlantic Research*, the Court "assume[d] without deciding that § 107(a) provides for joint and several liability." *Id.* at 2339 n.7.

cuit's prior holding "that § 113 provided the sole cause of action to PRPs").

**[6]** Under *Atlantic Research*, a PRP such as Kotrous or Adobe that incurs costs voluntarily, without having been subject to an action under § 106 or § 107, may bring a suit for recovery of its costs under § 107(a); a party in such a position does not need a right to implied contribution under § 107. Any of the defendants sued by such a PRP may seek contribution under § 113(f) because they now will have been subject to an action under § 107. *See Atl. Research*, 127 S. Ct. at 2339 (stating that "a defendant PRP in such a § 107(a) suit could blunt any inequitable distribution of costs by filing a § 113(f) counterclaim"); *see also Atl. Research Corp. v. United States*, 459 F.3d 827, 835 (8th Cir. 2006) ("CERCLA, itself, checks overreaching liable parties: If a plaintiff attempted to use § 107 to recover more than its fair share of reimbursement, a defendant would be free to counterclaim for contribution under § 113(f)."), *aff'd*, 127 S. Ct. 2331 (2007); *Consol. Edison*, 423 F.3d at 100 n.9 ("While we express no opinion as to the efficacy of such a procedure, there appears to be no bar precluding a person sued under section 107(a) from bringing a counterclaim under section 113(f)(1) for offsetting contribution against the plaintiff volunteer who, if sued, would be liable under section 107(a).").

Applying *Atlantic Research* to Kotrous' claims, the first claim in Kotrous' complaint sought recovery of his response costs pursuant to § 107 and contribution pursuant to § 113. Bayer moved to dismiss this claim, but the district court denied the motion, relying on *Pinal Creek* and *Western Properties* to conclude that SARA's provision of an explicit right to contribution in § 113(f) did not supplant the implicit right to contribution in § 107(a) that we previously had found. The district court rejected Bayer's argument that "Kotrous' status as a PRP bars him from seeking *any* relief under § 107(a)," stating that "*Pinal Creek* held only that a PRP cannot maintain an action under § 107(a) *for joint and several liability*."

The district court noted the Supreme Court's skepticism regarding the implied right to contribution, *see Cooper*, 543 U.S. at 162, but reasoned that the Court had not overruled the cases recognizing an implicit right to contribution. Because Kotrous had invoked § 107(a) in his claim for contribution, the court concluded that he had stated a claim for contribution under CERCLA.

[7] Although the district court correctly interpreted our precedent as it existed at the time, *Atlantic Research* has changed the state of the law. The Supreme Court has made it clear that a PRP who has not been subject to a § 106 or a § 107 action, like Kotrous, is not entitled to seek contribution under § 113. Instead, he should proceed under § 107 for cost recovery.[10] We therefore vacate the order of the district court and remand for proceedings consistent with this opinion. On remand, Kotrous should be granted leave to amend his complaint as needed.

[8] Turning next to Adobe's claims, Adobe's complaint sought contribution "for all or a portion of" its response costs pursuant to § 107. As in *Kotrous*, the district court denied the defendants' motion to dismiss, in reliance on Ninth Circuit precedent that now has been undermined by *Atlantic Research*. We therefore vacate section II.B. of the district court's order, which is the portion addressing Adobe's CERCLA claim, and remand for further proceedings consistent with this opinion.[11] On remand, Adobe should be allowed to amend its complaint as needed.

---

[10]Kotrous did not waive his claim for an implied right to contribution. However, we need not address whether § 107 contains an implied right to contribution because Kotrous should seek cost recovery instead.

[11]At oral argument, Adobe correctly anticipated our holding and waived its claim for an implied right to contribution.

## CONCLUSION

*Atlantic Research* overruled our holding in *Pinal Creek* that an action between PRPs is necessarily for contribution. Under *Atlantic Research*, Kotrous and Adobe are entitled to bring a claim for recovery of costs under § 107(a), even if they are PRPs. The Supreme Court's holding, however, has made it clear that they must seek cost recovery under § 107, not contribution under § 113, because they have not been subject to an action under § 106 or § 107.

In each of these appeals, the judgment of the district court is vacated and the case remanded for further proceedings. Each party shall bear its own costs on appeal.

**VACATED and REMANDED.**