UNION STATION ASSOCIATES,
LLC, Plaintiff,

v.

PUGET SOUND ENERGY,
INC., Defendant.

No. C01–298P.

United States District Court,
W.D. Washington
at Seattle.

Nov. 8, 2002.

Parker C Folse, III, Susman Godfrey, L.L.P., Seattle, for Union Station Associates LLC, plaintiff.

Michael Pierson, Megan E McCloskey, Riddell Williams, P.S., Seattle, for Puget Sound Energy Inc, defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

PECHMAN, District Judge.

This matter comes before the Court on defendant Puget Sound Energy's ("PSE") motion for partial summary judgment, in which PSE asserts that plaintiff Union Station Associates' ("Union") action should be limited to one for contribution, not full cost recovery, under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.* Dkt. No. 57. Having considered defendant's motion and supporting papers, plaintiff's opposition and supporting papers, defendant's reply, and having heard oral argument on the issues, the Court hereby GRANTS the motion. Plaintiff's motion to strike certain materials in support of defendant's reply is likewise GRANTED.

## BACKGROUND

This is a cost recovery/contribution action under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, and Washington's Model Toxics Control Act ("MTCA"). RCW 70.105D.010 *et seq.* The causes of action arise out of alleged contamination by PSE's corporate predecessors of a parcel of land currently owned by Union. Both parties have given long and detailed accounts of the factual background of the case. Union itself points out the only two material facts needed to decide this motion: (1) Does Union currently own the land? (2) Did Union know that the land was contaminated when Union purchased it? Union admits that the answer to both of these questions is yes. Opposition at 2. Although many other facts are in dispute, none are material to the motion before the Court. Therefore, the issue is ripe for summary judgment determination. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The factual background is as follows.

Union Station Associates, LLC is a development company that was set up by Nitze–Stagen & Co. in 1997 to develop a plot of land in the International District of Seattle that includes Union Station and areas to the north and south of that building. The land now contains several modern office buildings with parking garages below. This is also where the Metro bus tunnel emerges at the south end of its run. Union was involved in the renovation of the Station and the construction of the parking garages. It appears that they then sold off the rights to the airspace above the garages for the construction of the office buildings.

Prior to purchase of the land, Union entered into a consent decree with the Washington State Department of Ecology that included an agreement to take on cleanup/containment of hazardous materials at the site in consideration for a covenant not to sue. The site was at the time listed on the Washington "Hazardous Sites List." Once the consent decree was entered, Union proceeded to buy the parcel (in a purchase and sale agreement holding the prior owner harmless for any responsibility related to environmental cleanup) and commenced construction. It appears from the record that the primary environmental action taken was the installation of a concrete cap over the contaminated area, not removal of contaminated soils. The vast majority of the concrete cap constituted the base of the parking garages constructed by Union.

The history of the land is discussed in detail in the parties' briefing. The site was originally waterfront property, at least at high tide, and bordered on Elliot Bay. Beginning sometime in the late 1800's, the site contained a "gas manufacturing plant," which basically distilled coal by superheating it and condensing the emitted gases. The process produced several grades of usable oil, as well as a tarry pitch substance as a waste product. This tarry substance was allegedly dumped on the ground and in the water near the plant. The site also contained other industrial entities that likely contaminated the area as well.

In the early 1900's, that extension of Elliot Bay was filled in, and the gas plant property and several adjacent plots were consolidated and purchased for use by Union Pacific Railroad, which built Union Station and laid tracks running south from the station. The Station was operational until the early 1970's, during which time some contamination of soils may also have taken place. In the mid–1980's, the Railroad began looking for development options, and eventually decided to sell the land instead. Finally, in 1997 the purchase and sale agreement was finalized and ownership transferred to Union.

Union is now suing PSE under section 107 of CERCLA under a theory of joint and several liability for the actions of PSE's alleged corporate predecessors. The causes of action at issue in this motion involve ones for *cost recovery*, not *contribution*. In other words, Union is suing PSE for the entire cost of any environmental cleanup/containment incurred at the site.

### ANALYSIS

PSE moves for partial summary judgment on two causes of action, one under Section 107 of CERCLA, and one under RCW 70.105D.040 of the MTCA. Both involve actions for cost recovery under a theory of joint and several liability. PSE's contention is that both acts limit recovery among "potentially responsible persons"/"potentially liable persons" ("PRP"/"PLP") to contribution actions. Because Union is itself is a PRP/PLP, PSE argues, it can only sue for contribution, and its cost recovery actions should be dismissed. In

the CERCLA action, Union proposes a judicially-created exception for non-polluting PRPs, as recognized in the Seventh Circuit. In the MTCA action, Union claims that the act allows for joint and several liability, while PSE points to language in the statute that directs liability to be apportioned using "equitable factors." Each act will be discussed in turn.

**The CERCLA claim**

"CERCLA was enacted to protect and preserve public health and the environment by facilitating the expeditious and efficient cleanup of hazardous waste sites. *Pritikin v. Dep't of Energy*, 254 F.3d 791, 794–95 (9th Cir.2001). But CERCLA also has a secondary purpose—"assuring that "responsible" persons pay for the cleanup." *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 880 (9th Cir.2002). Section 107 of CERCLA defines "covered parties," otherwise know as "potentially responsible parties" ("PRPs"), as:

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment . . .

(4) any person who accepts or accepted any hazardous substances for transport . . .

**shall be liable for—-**

(A) . . .

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan.

. . .

42 U.S.C. § 9607(a) (emphasis added). Parties in these categories are PRPs "subject *only* to the defenses set forth in subsection (b) of this section—" *Id.* (emphasis added). Subsection (b) states:

There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused by—

(1) an act of God;

(2) an act of war;

(3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant . . . , if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, . . . , and (b) he took precautions against foreseeable acts or omissions of any such third party . . .

*Id.* § 9607(b). The definition of "contractual relationship:"

includes . . . land contracts, deeds, . . . unless the real property on which the facility concerned is located was acquired by the defendant *after the disposal* or placement of the hazardous substance on, in, or at the facility, *and* [one of the following is established]:

(i) At the time the defendant acquired the facility the defendant *did not know and had no reason to know* that any hazardous substance which is the subject of the release or threatened release was disposed of on, in, or at the facility.

. . .

*Id.* § 9601(35)(A) (emphasis added). That definition goes on to include requirements for lack of constructive knowledge, requiring "all appropriate inquiries" to be undertaken prior to purchase of the land. *Id.* § 9601(35)(B). This statutorily defined exception to liability has become known as

the "innocent owner" defense. *Carson Harbor*, 270 F.3d at 882.

 The effect of being able to claim the innocent owner defense is substantial when it comes to recovery. An "innocent owner" is not a PRP, and therefore can sue any other existing PRP for full cost recovery under a theory of joint and several liability. But "[b]ecause all PRP's are liable under the statute, a claim by one PRP against another PRP necessarily is for contribution. A PRP's contribution liability will correspond to that party's equitable share of the total and will not be joint and several." *Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1301 (9th Cir.1997). This was made clear by Congress when it enacted Section 113(f) in passing the Superfund Amendments and Reauthorization Act of 1986 ("SARA"). 42 U.S.C. §§ 9601–9675. That section codified judicially created contribution actions between and among PRPs. *Id.*

PSE spends a substantial portion of its opening brief showing why Union can not use the innocent owner defense. Union then in its opposition clearly states that it is not relying on the innocent owner defense. Opposition at 17. Instead, Union relies on a judicially created exception, which it terms the "non-polluting PRP" exception. Only the Seventh Circuit appears to have officially adopted such an exception. *Rumpke of Indiana, Inc. v. Cummins Engine Co.*, 107 F.3d 1235 (7th Cir.1997). Although it is disputed as to whether Union actually is a "non-polluting" PRP (*See* Reply at 9–10), the Court assumes as much for purposes of this motion.

In *Rumpke*, a landowner who claimed it had not polluted the land in any way sued a polluting PRP for full cost recovery. The Seventh Circuit held that "landowners who alleged that they did not pollute the site in any way may sue for their direct response costs under § 107(a)." 107 F.3d at 1241. The court reasoned that:

> [i]f one were to read § 107(a) as implicitly denying standing to sue even to landowners like Rumpke who did not create the hazardous condition, this would come perilously close to reading § 107(a) itself out of the statute. As one district court in New Jersey recognized, this position would mean that Section 107(a) private party plaintiffs will be few and far between. Truly innocent private party plaintiffs would be limited to ... a party who can claim one of the complete defenses set forth in 42 U.S.C. § 9607(b).

*Id.* The court assumed that the plaintiff had purchased the land with no knowledge of the presence of environmental hazards. *Id.* at 1239. Thus it appears that the plaintiff would have been able to avail itself of the statutory defense.

It is undisputed that this is an unresolved legal issue in the Ninth Circuit. In *Pinal Creek*, the court specifically acknowledged *Rumpke* in saying:

> The Seventh Circuit has adopted an exception to the general rule that a PRP is limited to a contribution action under §§ 107 and 113, which excepts PRPs who have not polluted the site in any way. *Rumpke* ... Because the Pinal Group consists of parties who are admittedly partly responsible for the contamination at issue here, that exception would not apply to this case. We, therefore, do not reach that issue.

*Pinal Creek*, 118 F.3d at 1303 n. 5. This Court is therefore faced with an issue of first impression, and turns to authority outside the Ninth Circuit for guidance.

Contrary to Union's assertions in its opposition, outside the Seventh Circuit the *Rumpke* decision has been soundly rejected by some courts, and has received a lukewarm reception at best by others. In *Bedford Affiliates v. Sills*, 156 F.3d 416,

419 (2nd Cir.1998), a landowner brought suit under CERCLA against lessees and a sublessee that operated a dry cleaning business on its property. The landowner argued that it was "innocent" of causing any contamination to the land, and therefore should not be limited to a contribution action against the actual polluting lessees and sublessee. *Id.* at 419–20. The Second Circuit soundly rejected this argument and the holding in *Rumpke*, stating:

> we hold that a potentially responsible person under § 107(a) that is not entitled to any of the defenses enumerated under § 107(b) ... cannot maintain a § 107(a) action against another potentially responsible person.... [landowner] instead must rely on a claim for contribution provided for in CERCLA § 113(f)(1).

*Id.* at 425. The court also distinguished between "generic" innocence and statutory innocence under CERCLA. "To be innocent in a CERCLA response cost suit, one must be innocent in the eyes of the law." *Id.* at 419.

The Seventh Circuit's judicially created exception was likewise recently rejected by the Tenth Circuit. *Morrison Enter's v. McShares, Inc.,* 302 F.3d 1127 (10th Cir. 2002). In that case, plaintiff-landowner argued that even if it did not qualify for a § 107(b) defense, it should be able to bring a full cost recovery action against a successor-in-interest to the actual polluter because it (the landowner) was an "innocent PRP" that was not responsible for the spill. *Id.* at 1134. The court considered the *Rumpke* exception and fairness arguments similar to that espoused by Union in the present suit. *Id.* at 1135. Nonetheless, the court rejected these arguments, holding:

> Because [plaintiff] is the landowner of the property in question and because it cannot rely on any of the defenses in [§ 107(b) ], it is a PRP under CERCLA.

And because [plaintiff] is a PRP, it may not proceed with two independent suits under both [§§ 107 and 113(f) ], but instead may only proceed with an action for contribution under [§ 113(f) ].

*Id.* Thus the Tenth Circuit made it clear that a person's status as a "PRP" precludes cost recovery actions regardless of whether that person ever contributed to the contamination of the property.

These holdings represent a logical extension of the well-established notion that PRP are generally limited to contribution actions when suing to recoup cleanup costs from other PRPs. In *United Technologies v. Browning–Ferris Indus.,* 33 F.3d 96 (1st Cir.1994), the First Circuit discussed at length the mutual exclusivity of cost-recovery actions and contribution actions under § 107(a) and § 113(f) respectively. In that case, plaintiffs who have been held liable for cleanup of a contaminated site under a consent decree brought suit for full cost recovery against other parties responsible for the contamination. *Id.* at 97–98. The court analyzed the text of CERCLA and SARA, the legislative history of the statutes, and the case law prior to the passage of SARA, and determined that parties that are jointly and severally liable under § 107(a) can only recover contribution from other jointly and severally liable parties. *Id.* at 98–101. "[I]t is sensible to assume that Congress intended only innocent parties—not parties who were themselves liable—to be permitted to recoup the whole of their expenditures." *Id.* at 100. *See also Pinal Creek Group v. Newmont Mining Corp.,* 118 F.3d 1298, 1301 (9th Cir.1997).

This premise was echoed by the Third Circuit subsequent to the *Rumpke* decision. In *New Castle County v. Halliburton NUS Corp.,* 111 F.3d 1116, 1119 (3rd Cir.1997), a landfill owner attempted to bring an action for cost recovery under

§ 107 against a contractor that allegedly improperly installed monitoring wells on the property. The court first cited overwhelming authority holding that only "innocent" parties may bring actions for cost recovery. *Id.* ("An action brought by a potentially responsible person is by necessity a section 113 action for contribution.") The court went on to consider the exact concern raised in *Rumpke* of who might be able to bring a private § 107 action, stating:

> We do not decide under what circumstances a private individual may rely on section 107, or whether we endorse any of the exceptions for "innocent" landowners suggested by our sister courts. In is sufficient the we decide that a potentially responsible person under section 107(a), who is not entitled to any of the defenses enumerated under section 107(b), may not bring a section 107 action against another potentially responsible person.

*Id.* at 1124. Cf. *Matter of Reading Co.,* 115 F.3d 1111 (3rd Cir.1997) (tacitly allowing for the possibility of a non-polluting PRP exception, while limiting the PRP before it to an act for contribution).

Even courts that have left open the possibility of an exception for non-polluting PRP have expressed doubt as to its validity and even its necessity. In *Axel Johnson, Inc. v. Carroll Carolina Oil Co.,* 191 F.3d 409, 416 (4th Cir.1999), the court commented:

> Whether Congress intended or contemplated this kind of treatment for "innocent" but "potentially responsible" parties is not at all clear.... If an "innocent party" exception is even possible, a question we need not decide here, it would therefore seem prudent to limit its applicability to those who can make out one of the defenses to liability that § 107 itself provides.

*Id.* The court went on to find that even if *Rumpke*'s holding were valid, it was inapplicable in the case before it. *Id.* at 416–17.

Similarly, in *Centerior Serv. Co. v. Acme Scrap Iron & Metal,* 153 F.3d 344, 354 (6th Cir.1998), the court expressly left open the question of whether a truly innocent party could sue other PRPs for cost recovery. Yet it went on to address the argument that such a scheme would provide an incentive for voluntary cleanup if the PRP could be assured of full recovery. *Id.* The court noted that § 113(f) has its own incentives, since a court may allocate responsibility for response costs according to "equitable factors," which may include a party's willingness to cooperate in the remediation. *Id.* Additionally, if a party is truly non-polluting, its equitable share will be zero. This calls into question whether the *Rumpke* holding is even necessary to avoid inequity.

Finally, the parties have cited to numerous district court cases. The balance of the authority outside of the Seventh Circuit, where the district courts must follow *Rumpke* as controlling precedent, weighs heavily against adoption of *Rumpke* as an exception to the strict liability regime of CERCLA. *See e.g., City of Wichita v. Aero Holdings, Inc.,* 177 F.Supp.2d 1153 (D. Kan. 2000) (rejecting *Rumpke* and limiting non-polluting owner of contaminated land to contribution action); *M & M Realty Co. v. Eberton Terminal Corp.,* 977 F.Supp. 683, 686 (M.D.Pa.1997) (requiring innocent landowner defense to be made out under § 107(b)); *Boyce v. Bumb,* 944 F.Supp. 807, 812 (N.D.Cal.1996) (Owner PRP free to assert cost recovery action if it can make out defense under § 107(b)).

■ Based on the foregoing analysis of the text of the statute, applicable Ninth Circuit precedent, and other jurisdictions' treatment of the *Rumpke* decision, this

Court declines to create an exception for non-polluting PRPs. The motion for partial summary judgment is granted. There is no doubt that Union is a PRP by the statutory definition—it is an owner of the land. 42 U.S.C. § 9607(a)(1). Union does not qualify for the statutory "innocent owner's defense because it knew of the contamination when it bought the land." Indeed, Union entered a consent decree with the Department of Ecology in order to limit its liability and partially immunize itself from future suit. There is no other defense to liability, and hence PRP status, available to Union.

As a matter of statutory interpretation, Section 107 is clear when it says "subject *only* to the defenses set forth in subsection (b) of this section." 42 U.S.C. § 9607(a) (emphasis added). Only means only. As PSE points out, CERCLA distinguishes between *responsible parties and non-responsible parties,* not polluters and non-polluters. CERCLA's primary goal is to ensure that contaminated sites are remediated through clean up or containment. *Bedford Affiliates,* 156 F.3d at 425 (" § 107(a) imposes strict liability without regard to causation on parties who fall within at least one of the four categories of potentially responsible person.").

Furthermore, the statutory framework actually sets out a defense based on "innocence," and that defense does not include PRPs who don't pollute. It is clear the Congress only intended those persons who can make out a defense under § 107(b) to be absolved of liability. It is also clear that Congress intended that, to use the words of the *Rumpke* court, "Section 107(a) private party plaintiffs will be few and far between." 107 F.3d at 1241. This is true; the most common plaintiff under § 107(a) will be the government. This does not present a problem; § 113 provides an adequate remedy for private parties wishing to recover cleanup costs from other potentially liable persons.

Finally, *Rumpke* is founded on a different factual background, and is outside the intent and text of the statute. With very few exceptions, courts outside the Seventh Circuit have either rejected its holding and rationale, or expressed grave doubt as to its validity and necessity while declining to reach the issue. It created a controversy where none existed before. For all these reasons, PSE's motion with respect to the CERCLA § 107 action is granted. Union's remedy as to PSE is therefore limited to a contribution action under section 113(f).

**The MTCA Claim**

■ The issue presented is whether the MTCA permits a private right of action that allow the plaintiff to recover under a joint and several liability theory. In *Bird–Johnson v. Dana Corp.,* 119 Wash.2d 423, 428–29, 833 P.2d 375 (1992), the Washington Supreme Court declared that there was no private right of action for response cost recovery. The Washington Legislature then enacted RCW 70.105D.080 to allow for contribution actions among Potentially Liable Persons ("PLPs").

The MTCA, in allowing contribution actions, instructs the courts to award recovery costs "based on such equitable factors as the court determines are appropriate." RCW 70.105D.080. Washington courts have used this section to apportion damages equitably, not on a joint and several theory. *Dash Point Village Assocs., v. Exxon Corp.,* 86 Wash.App. 596, 607, 937 P.2d 1148 (1997). (specifically deciding not to impose full liability on the defendant, and instead awarding recovery based on equitable factors.)

The motion for partial summary judgment on the MTCA claim is granted for many of the same reasons as were detailed above. Liability is determined under

RCW 70.105D.040, but the means for determining recovery and the mechanics of actions *among* PLPs is governed by .080. That section turns to equitable factors to determine contribution, not a full cost recovery scheme.

## CONCLUSION

Because plaintiff's action is necessarily one for contribution under both CERCLA and the MTCA, defendant's motion for partial summary judgment is granted. Plaintiff's motion to strike material submitted in support of defendant's reply brief is also granted.

The Clerk is directed to send copies of this order to all counsel of record.