**CITY OF MOSES LAKE,
a Washington municipal
corporation, Plaintiff,**

v.

**The UNITED STATES of America,
et al., Defendants.**

No. CV–04–0376–AAM.

United States District Court,
E.D. Washington.

Jan. 3, 2007.

Jessica K. Ferrell, Linda Rae Larson, Steven Gary Jones, Marten Law Group PLLC, Katherine Kennedy, Timothy G, Leyh, Danielson Harrigan Leyh & Tollefson, Seattle, WA, for Plaintiff.

Christina Falk, Mary Anne Zivnuska, Quynh Bain, U.S. Department of Justice, Washington, DC, Michael James Zevenbergen, United States Department of Justice, Seattle, WA, Robert H. Foster, U.S. Department of Justice, Denver, CO, for Defendants.

## ORDER DENYING MOTION FOR CLARIFICATION, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT ON ALL REMAINING CLAIMS, *INTER ALIA*

MCDONALD, Senior District Judge.

**BEFORE THE COURT** is Defendant Lockheed Martin Corporation's "Motion For Clarification, Or, In The Alternative, For Summary Judgment On All Remaining Claims" (Ct.Rec.365), and Plaintiff City Of Moses Lake's "Motion To Strike The Declaration Of Robert Morrison And Portions Of Lockheed's Reply In Support Of Its Statement Of Material Facts" (Ct.Rec. 396). These motions were heard without oral argument.

## I. BACKGROUND

On October 16, 2006, this court entered an order (Ct.Rec.354) in which it granted summary judgment to Defendant Lockheed Martin Corporation (Lockheed), finding that Plaintiff City Of Moses Lake (Moses Lake) was barred under the CERCLA and MTCA statutes of limitations from recovering certain response costs incurred between 1989 and 1994, and also could not recover certain response costs incurred after 1994 because those costs were not "necessary."[1] This court went on, however, to address Moses Lake's motion for summary judgment of liability under CERCLA and MTCA against Lockheed for the following reason:

> The court will address Lockheed's liability, even though Moses Lake's action seeking recovery for costs incurred between 1989 and 1994 is time-barred, and certain costs incurred by Moses Lake after 1994 were not "necessary" and therefore, are not recoverable. The reason is that Moses Lake has also asserted contribution claims against Lockheed, seeking to have Lockheed pay its equitable share of any response costs for which Moses Lake may be found liable. While it appears Moses Lake has yet to be found liable for any response costs, this may well change with issuance of EPA's final "remedial action plan" which

---

1. That finding was recently reaffirmed in the court's December 7, 2006 "Order Denying Motion To Alter Or Amend Order" (Ct.Rec. 405).

is intended to address cleanup of the aquifer the "Site"as a whole.[2]

(Ct. Rec. 354 at p. 33).[3]

In its "Motion For Clarification Or, In The Alternative, Summary Judgment On All Remaining Claims," Lockheed asserts that, as a matter of law, Moses Lake has no right to contribution under either CERCLA or MTCA, and Moses Lake's "contribution claim for costs it may or may not be required to pay in the future [is] not ripe because there is no live case or controversy." Lockheed seeks a "clarification" to the effect that Moses Lake has no remaining claims against Lockheed pursuant to the court's October 16, 2006 order, or alternatively, asserts it is entitled to summary judgment to that effect.

What the court anticipated as a relatively straightforward issue about the ripeness of Moses Lake's contribution claims under CERCLA and MTCA is actually rather complicated, and furthermore, has generated an issue as to whether Moses Lake continues to maintain a 42 U.S.C. § 9607(a)(1)-(4)(B) private cost recovery claim for other response costs, including future response costs, beyond those specifically addressed in the court's October 16 order.

## II. DISCUSSION

### A. Overview

Moses Lake's "First Amended Complaint," filed January 17, 2006, alleges a cause of action under CERCLA for cost recovery pursuant to 42 U.S.C. § 9607(a), and a cause of action for contribution "pursuant to 42 U.S.C. § 9613(f) and federal common law." With regard to the contribution cause of action, Moses Lake alleges at Paragraph 7.2 of its "First Amended Complaint" (Ct.Rec.182):

> The City denies liability for response costs under CERCLA arising out of the facts alleged herein. Pleading in the alternative, however, if the City is ultimately found liable under 42 U.S.C. § 9607 for any response costs, pursuant to 42 U.S.C. § 9613(f) and federal common law, Defendants are liable to the City for their equitable shares of the City's total response costs, including legal fees, incurred or to be incurred by the City in response to the release or threat of release of hazardous substances at the Site.

■ A cost recovery cause of action, as authorized by § 9607(a), permits the government or a private party who has incurred response costs to hold a PRP (Potentially Responsible Party) jointly and severally liable for those costs. That means a particular PRP can be held 100% liable for the costs, regardless of its particular contribution to the costs incurred. *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 945–46 (9th Cir.2002). Moses Lake does not and cannot assert its § 9607(a) cost recovery cause of action as a PRP. It asserts its cost recovery cause of action on the premise that it is not liable for any of the response costs associated with the Moses Lake Wellfield Contamination Superfund Site.

A PRP who is potentially liable for response costs at a site can only sue another PRP for "contribution" to share in the payment of those costs. Moses Lake recognizes this in the manner in which it has pled its contribution claim under CERCLA. As stated by the Ninth Circuit Court

---

**2.** "Site" means "Moses Lake Wellfield Contamination Superfund Site" as designated on the National Priorities List (NPL) by the Environmental Protection Agency (EPA).

**3.** Moses Lake's motion for summary judgment was denied, this court finding there were genuine issues of material fact as to Lockheed's liability under CERCLA and MTCA.

of Appeals in *Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1301 (9th Cir.1997):

> Because all PRPs are liable under the statute, a claim by one PRP against another PRP necessarily is for contribution. A PRP's contribution liability will correspond to that party's equitable share of the total liability and **will not be joint and several.** CERCLA simply does not provide PRPs who incur cleanup costs with a claim for the joint and several recovery of those costs from other PRPs.

(Emphasis added).

42 U.S.C. § 9613(f) provides in relevant part:

> **(1) Contribution**
>
> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, **during or following any civil action under section 9606 of this title or under section 9607(a) of this title.** Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.
>
> **(2) Settlement**

> A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.
>
> **(3) Person not party to settlement**
>
> . . . .
>
> > **(B)** A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2).

(Emphasis added).

In *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157, 167–68, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004), the U.S. Supreme Court held that a PRP cannot seek cleanup cost contributions from other PRPs under § 9613(f)(1) for voluntarily incurred cleanup costs. In order to assert a § 9613(f) claim, a PRP must first be compelled to incur cleanup costs through a suit for response costs under § 9606 or § 9607(a).[4] This requirement is derived from the language in § 9613(f)(1) that "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of his title,

---

4. The Washington Department of Ecology (DOE) appears to acknowledge this is so:

> At current or former federal facilities, *Aviall* arguably leaves private PRPs without any recourse against the federal government when EPA does not take CERCLA [42 U.S.C. § 9606] action against another federal agency. This is currently the situation at the Moses Lake site. The State of Wash-

ington has a duty to protect human health and the environment for all of the state's citizens, including ensuring that the federal government adequately addresses the contamination it has caused in our state.

(Moses Lake Response Br., Ct. Rec. 384 at pp. 13–14). A § 9606 action is an abatement action brought by the United States.

**during or following** any civil action under section 9606 of this title or under section 9607(a) of this title." (Emphasis added).

In *Cooper*, the Supreme Court declined to address the issue of whether PRPs can sue other PRPs under § 9607(a) for joint and several liability. 543 U.S. at 169–70, 125 S.Ct. 577. The Court also declined to address whether a PRP has a judicially implied right of contribution under § 9607(a). *Id.* at 170–71, 125 S.Ct. 577. In *Adobe Lumber Inc. v. Hellman*, 415 F.Supp.2d 1070 (E.D.Cal.2006), a district court for the Eastern District of California considered how the Ninth Circuit had resolved, or would resolve, the questions the Supreme Court did not resolve. The district court concluded that whether PRPs have a cost recovery claim for joint and several liability had already been answered in the negative by the Ninth Circuit in *Pinal Creek*. *Id.* at 1076. The district court also concluded that *Pinal Creek* foreclosed a PRP from pursuing a § 9607 cost recovery action for some form of liability other than joint and several since *Pinal Creek* held that a PRP does not have a cost recovery action, but instead has only a contribution action implicitly provided by section § 9607 and regulated by the terms of § 9613. *Id.*, citing *Pinal Creek*, 118 F.3d at 1305 n. 7.

Finally, in *Adobe*, the district court concluded *Pinal Creek* did not establish the existence of an independent, judicially implied right to contribution, but rather that a PRP's right to claim contribution from other PRPs is controlled by joint operation of § 9607 and § 9613. *Id.* at 1077. The district court found the plaintiff could not bring suit pursuant to the implied right of contribution recognized in *Pinal Creek* because "that right ha[d] been coupled with

the requirements of section 113(f), which under *Aviall*, the plaintiff ha[d] not satisfied" because it had not first been sued under section 9606 or 9607. *Id.* at 1077–78. Stated the court:

> Until the Ninth Circuit cuts the implied right to contribution under section [§ 9607(a)] loose from the moorings of section [9613(f)], **PRPs in this circuit, like plaintiff here, who have voluntarily incurred cleanup costs, will want for a clear right to seek contribution from other PRPs.**

*Id.* at 1078 (emphasis added).

Washington's MTCA recognizes the same distinction between cost recovery and contribution claims as CERCLA. The "Third Cause Of Action" pled in Plaintiff's "First Amended Complaint" is for "Cost Recovery And Contribution Under MTCA" against Boeing and Lockheed.[5] RCW 70.105D.080 states that "a person may bring a private right of action, **including a claim for contribution** or for declaratory relief, against any other person liable under RCW 70.105D.040 for the recovery of remedial action costs." (Emphasis added). "The MTCA, in allowing contribution actions, instructs the court to award recovery costs 'based on such equitable factors as the court determines are appropriate.'" *Union Station Associates, LLC v. Puget Sound Energy, Inc.*, 238 F.Supp.2d 1218, 1225 (W.D.Wash.2002). The "means for determining recovery and the mechanics of actions *among* PLPs [Potentially Liable Persons] is governed by .080[and][t]hat section turns to equitable factors to determine contribution, not a full cost recovery scheme." *Id.* at 1226. (Emphasis in original).

---

**5.** Interestingly, however, it is pled in a manner that seems to indicate it is only a cost recovery action. Moses Lake does not specifically allege that if it is found liable under the

MTCA for any response costs, Boeing and Lockheed are liable to Moses Lake for their equitable shares of Moses Lake's total response costs.

**B. Does Moses Lake Still Have CERCLA And MTCA Cost Recovery Claims Against Lockheed For "Necessary" Response Costs And "Remedial Action" Costs Incurred After 1994?**

■ This court granted summary judgment to Lockheed finding that recovery of certain costs related to Moses Lake's "Larson Project" between 1989 and 1994 was time-barred under CERCLA and MTCA, and that certain costs incurred after 1994 were not "necessary" and therefore, not recoverable under CERCLA and MTCA.[6] Moses Lake contends it retains a "viable cause of action for recovery of 'necessary' post–1994 'response' costs under CERCLA § 107 [§ 9607]" and further contends "[t]he investigation costs that the City has incurred after 1994 and into the present are recoverable under MTCA [RCW 70.105D.080] because they are 're-medial action costs.'"

Moses Lake has submitted a declaration from Nicole Sweetland, a hydrogeologist with Daniel B. Stephens & Associates, Inc., (DBS & A). (Ct.Rec. 385). DBS & A "has been retained as a consultant to the City of Moses Lake ... with regard to its lawsuit to recover response costs incurred by the City at the Moses Lake Wellfield Contamination Superfund Site ...." DBS & A began work at the Site in 2004 and Sweetland, personally, started working on the "project" in December 2004. (Ct. Rec. 385 at p. 1). Sweetland indicates DBS & A has billed the City more than $250,000 for: 1) review of EPA's Proposed Plan (the Draft Proposed Plan); 2) review of USACE's (U.S. Army Corps of Engineers') Remedial Investiga-tion, Groundwater Feasibility Study and Soils Feasibility Study; and 3) preparation of six "White Papers" submitted to EPA commenting on the aforementioned. (*Id.* at p. 3). According to Sweetland, one of the primary conclusions in the "White Papers" is that "additional site characterization for both particular portions of the Site and also for the Site as a whole is necessary before an appropriate remedy at the Site can be developed that would be protective of human health and the environment." (*Id.*). Sweetland says some of this additional site characterization began as part of the sampling DBS & A undertook in October 2006, referring to the site inspection and sampling which this court, in a September 22, 2006 order (Ct.Rec. 333), directed be undertaken at Boeing facilities on the Site. (*Id.*).[7] Sweetland says estimated billing for this site inspection and sampling will be over $90,000. (*Id.*). Prior to this site inspection and sampling, Sweetland indicates DBS & A developed a "Work Plan" to begin the process of addressing alleged deficiencies in the site characterization undertaken by USACE and EPA for the Site as identified in the "White Papers," and to confirm whether there have been releases of hazardous substances and identify pathways through which hazardous substances may travel. (*Id.* at 4). According to Sweetland, more than $10,000 was billed for the preparation of this Work Plan. (*Id.*). Sweetland says additional sampling and site characterization will be necessary. (*Id.*).

These costs were not addressed by Lockheed in its motion for summary judgment filed July 7, 2006, and Lockheed

---

**6.** The costs were not "remedial action" costs under MTCA. See p. 25 of October 16, 2006 order.

**7.** These facilities include the 8–place hangar in which at one time Lockheed occupied a space known as the Missile Assembly and Maintenance Shop ("MAMS"), and which Moses Lake alleges is a source of TCE contamination at the Site as discussed at pp. 32–59 of this court's October 16, 2006 order.

contends there is a valid reason why they were not. According to Lockheed, despite discovery requests to Moses Lake asking for identification of all response costs, Moses Lake never identified the aforementioned costs related to DSB & A's work. On June 17, 2005, the United States Defendants served Moses Lake with a subpoena duces tecum and notice of deposition pursuant to Fed.R.Civ.P. 30(b)(6) which, among other things, requested that to the extent Moses Lake sought any CERCLA response costs not identified in its FTCA administrative claim letter, it produce someone to testify about those additional costs. Counsel for Moses Lake did not produce someone to testify about any additional costs, and instead, in an August 2005 letter to counsel for the United States, said "this issue is premature until the EPA issues its ROD, as the remedies prescribed in the ROD will have a direct impact on the amount and nature of the City's remediation costs." While Moses Lake does not and cannot dispute this, it now offers the following "clarification:"

> While a final determination of the City's damages will, in fact, be impacted by the EPA's ROD, the City's noting of this fact does not establish that the City has not incurred necessary response costs under CERCLA and MTCA from the time that it filed its initial FTCA claim letter in 2003. The City is currently incurring recoverable response costs under CERCLA and MTCA and will continue to incur recoverable response costs under CERCLA and MTCA in the future. The City has explained repeatedly that it has not set forth all response costs for which it seeks recovery, as the City is continuing to incur response costs, and that those costs will be fully detailed during the damage phase of this case.

(Moses Lake's Response To Lockheed's Statement of Material Facts, Ct. Rec. 386 at p. 1).

On December 12, 2005, Moses Lake served supplemental responses to Lockheed's Second Set of Interrogatories, including Interrogatory No. 1 which asked Moses Lake to identify each and every remedial action, removal action, and/or response action it had taken at the Moses Lake Wellfield Contamination Superfund Site and for which it sought recovery of costs under CERCLA and MTCA. In response, Moses Lake referred to actions described in a December 31, 2003 memorandum authored by Gerry McFaul, Moses Lake City Engineer. (Ct.Rec.247, Ex. 1). The McFaul memorandum was authored prior to DSB & A's commencement of work in 2004 and so there is no mention of that work in the memorandum. It is also true, however, that Moses Lake supplemented its response in December of 2005, a year after DSB & A had started its work, yet made absolutely no mention of the cost of that work in its supplemental response to Lockheed's Interrogatory No. 1. Instead, all Moses Lake did was refer to McFaul's memorandum and the costs identified therein.

In July 2006, in conjunction with the filing of its "Motion For Summary Judgment Or, In The Alternative, Summary Adjudication Of Plaintiff's CERCLA and MTCA Causes Of Action," Lockheed filed a Statement of Material Facts which included SMF Nos. 5 and 6 indicating that on or about December 12, 2005, Moses Lake had served supplemental responses to Lockheed's Second Set of Interrogatories and asserting that "[i]n those responses, Plaintiff identifies a December 31, 2003, memorandum prepared by City Engineer Gerry McFaul and supporting documentation thereto as setting forth all of the response costs that Plaintiff seeks to recover in this action." (Ct. Rec. 240 at p. 2)(emphasis added). In response, Moses Lake asserted:

> Plaintiff's supplemental interrogatory responses and the McFaul memorandum

cited therein do not include all response costs incurred by the City. In its supplemental responses, Plaintiff reserved the right to supplement the information provided therein. Further, Lockheed deposed Mr. McFaul on February 23, 2006, on the additional issue of the City's response costs, and Mr. McFaul provided detail on the **USACE's** response costs during that deposition.

(Ct. Rec. 262 at p. 2)(emphasis added).

Again, Moses Lake did not identify any costs pertaining to DSB & A's work and McFaul apparently did not talk about any of the **City's** response costs, but discussed **USACE's** response costs. In its "Reply Statement Of Facts," Lockheed asserted that Moses Lake had "offered no evidence of any damages not addressed by Lockheed Martin's Motion," and correctly observed that liability and damages discovery had not been bifurcated by this court, but that discovery had been ongoing with regard to both liability and damages. (Ct. Rec. 293 at p. 4).

Fed.R.Civ.P. 37(c)(1) provides:

A party that without substantial justification fails to disclose information required by Rule 26(a) [Required Disclosures] or 26(e)(1) [Supplementation of Disclosures and Responses], or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Moses Lake was not "substantially justified" in failing to disclose the information about these additional response costs. Moses Lake's failure is not harmless because it deprived Lockheed of an opportunity to conduct discovery regarding these expenses and thereafter to challenge their recoverability as part of its motion for summary judgment filed July 7, 2006.

Therefore, pursuant to Fed.R.Civ.P. 37(c)(1), Moses Lake is not permitted to use evidence of these additional response costs in defending against Lockheed's motion and is effectively precluded from now asserting a claim against Lockheed for those costs under either CERCLA or MTCA.

**C. With Regard To Moses Lake's CERCLA And MTCA Cost Recovery Claims, Is Declaratory Relief Still Available For "Future Response Costs?"**

 What about "future response costs" not already incurred? Moses Lake contends "it is well-established that declaratory relief is available for future response costs sought under CERCLA," citing *In re Dant & Russell, Inc.*, 951 F.2d 246 (9th Cir.1991). In *Dant,* the court discussed 42 U.S.C. § 9613(g)(2) which provides that in actions under § 9607, "[t]he court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." According to the court:

These sections [Section 9607(a)(4)(B) and Section 9613(g)(2) ] envision that, before suing, CERCLA plaintiffs will spend some money responding to an environmental hazard. **They can then go to court and obtain reimbursement for their initial outlays, as well as a declaration that the responsible party will have *continuing liability* for the cost of finishing the job.**

*Id.* at 249–50 (emphasis added).

Lockheed has no "continuing liability" because this court found that with regard to the costs already incurred, recovery of them from Lockheed is either time-barred, or they are not recoverable because they were not "necessary." Moses Lake therefore did not "obtain reimbursement for [its] initial outlays."

Moses Lake also cites *Boeing Company v. Cascade Corp.*, 207 F.3d 1177, 1191 (9th Cir.2000), in which the court stated:

> CERCLA was intended to encourage [a] quick response and to place the costs on those responsible. Declaratory relief serves these purposes because all parties, like those in this case, will know their share of costs before they are incurred. The more liability can be limited and quantified, the more practical it is for a party to budget and borrow to finance it. Environmental litigation is tremendously complex, lengthy, and expensive. The costs and time involved in **relitigating** issues as complex as these where new costs are incurred would be massive and wasteful. Declaratory relief allocating future costs is therefore, consistent with the broader purposes of CERCLA.

(Emphasis added).

Because this court found Lockheed is not liable for any response costs already incurred, there is no possibility of a "relitigation" of the issues related to those costs. Therefore, as to Lockheed, Moses Lake has no right to declaratory relief for future response costs pursuant to 42 U.S.C. § 9613(g)(2). There is no reason to believe the result would be any different under MTCA. Because MTCA was modeled on CERCLA, the Washington Supreme Court has found CERCLA case law persuasive in interpreting MTCA. *Asarco Inc. v. Department of Ecology*, 145 Wash.2d 750, 754, 43 P.3d 471 (2002).

### D. Does Moses Lake Have A "Ripe" CERCLA Contribution Claim?

■ As noted above, in *Aviall*, the U.S. Supreme Court found that "contribution may only be sought subject to the specified conditions [in § 9613(f)(1) ], namely, 'during or following' a specified civil action." 543 U.S. at 166, 125 S.Ct. 577. Moses Lake contends the action filed against it on June 17, 2005 by the State of Washington Department of Ecology (DOE) in CV–05–182–FVS, asserting CERCLA (42 U.S.C. § 9607(a)(1)-(4)(A)) and MTCA (RCW 70.105D.080) cost recovery claims against Moses Lake with regard to the Moses Lake Wellfield Contamination Superfund Site, constitutes the requisite "civil action." Moses Lake indicates that a proposed Consent Decree is currently before Judge Van Sickle in CV–05–182 which will address DOE's CERCLA claims only, in light of the fact that Moses Lake and DOE jointly moved to dismiss DOE's MTCA claim, and Judge Van Sickle entered an order to that effect on November 21, 2006. (Ct. Rec. 26 in 05–182–FVS). A Joint Status Report filed by the parties in October 2006 (Ct. Rec. 19 in 05–182–FVS) indicates the parties had agreed on a Consent Decree, that it would be subject to a public comment period, and that after DOE considered the comments and made any changes, the parties would move for entry of the Decree, anticipated to be in early to mid-December 2006. According to Lockheed, pursuant to the Consent Decree, Moses Lake will pay DOE "past oversight costs" in the amount of $3,316.82.[8] Lockheed says DOE's lawsuit against Moses Lake was Moses Lake's idea, specifically for the purpose of evading the effects of *Aviall*. Lockheed argues that "[o]n these facts, [Moses Lake] should not be permitted to manufacture a cause of action by agreeing to pay $3,316.82 to a state agency that has no significant role in the EPA supervised clean-up." The merit of Moses Lake's contribution claim based on the aforementioned Consent Decree, however, is a different issue than the "ripeness" of that claim.

---

**8.** In the Draft Consent Decree, DOE reserves the right to seek additional costs from Moses Lake pursuant to § 9607(a)(1)-(4)(A) of CERCLA.

It is true the Consent Decree has not yet been approved, but § 9613(f)(1) merely requires a contribution claim be brought "during or following any civil action under section 9606 of this title or under section 9607(a) of this title." Lockheed contends the contribution claim is also unripe because the Consent Decree does not resolve Moses Lake's alleged liability to the United States and furthermore, pursuant to its terms, DOE expressly retains the right to seek additional costs under CERCLA. Lockheed does not, however, cite any authority, including *Aviall*, indicating that Moses Lake's entire liability to both the United States and DOE must be resolved before Moses Lake can assert a § 9613(f)(1) contribution claim. Moses Lake contends it is not necessary that it have been sued by the United States, or even DOE for that matter, so long as it was sued by someone seeking to compel Moses Lake to incur response costs. The plain language of § 9613(f)(1) supports that conclusion, as does the plain language of § 9613(f)(3)(B) which refers to resolution of liability "to the United States **or a** State **for some or all** of a response action or **for some or all** of the costs of such action in an administrative or judicially approved settlement." (Emphasis added).

In *Clear Lake Properties v. Rockwell*, 959 F.Supp. 763 (S.D.Tex.1997), Rockwell International, as a third-party plaintiff, asserted two independent causes of action against third-party defendant, Pace Analytical Services, Inc. (PASI). The first cause of action was a direct, private party cost recovery action against PASI under 42 U.S.C. § 9607(a) to secure reimbursement for past and future response costs. Secondly, Rockwell sought to maintain an action against PASI under 42 U.S.C. § 9613(f) to recover contribution to those response costs. PASI contended that Rockwell's contribution claim was not ripe because Rockwell had not yet paid more than its share of the response costs. The court found this contention to be "directly contrary" to the plain language of § 9613(f)(1). According to the court:

> The first quoted sentence [Any person may seek contribution from any other person who is liable under § 9607(a) of this title, during or following any civil action ... under § 9607(a) of this title ...] plainly states that a contribution action may be brought during a § [9607(a)] action such as the one brought by Plaintiff Clear Lake Properties against Rockwell in this case. The second quoted sentence [Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under ... § 9607 of this title] plainly states that a party does not even have to wait being sued in a direct action before bringing a contribution action under [§ 9613(f)]. Therefore, the statute clearly allows Rockwell to bring a contribution action pursuant [to § 9613(f)] at this time. **Furthermore, the only effect of postponement would be to require this Court to try the exact same issues of liability, damages and apportionment in a second, separate action. This Court does not have the luxury of trying cases more than once.**

*Id.* at 766–67 (emphasis added).

*Clear Lake* is authority that in the CERCLA context, the mere existence of a civil action against Moses Lake has a concrete impact on Moses Lake and constitutes an injury in fact. *Exxon Corp. v. Heinze*, 32 F.3d 1399, 1404 (9th Cir.1994) ("Ripeness" doctrine prevents premature adjudication and is aimed at cases that do not yet have a concrete impact upon the parties). The DOE lawsuit is not a contingent, speculative event, and it subjects Moses Lake to a realistic danger of direct injury. *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406

(1998)("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all"); *Thomas v. Anchorage Equal Rights Commission,* 220 F.3d 1134, 1139 (9th Cir.2000) (In assuring that the jurisdictional prerequisite of a "case or controversy" is satisfied, it is necessary to consider whether the plaintiff faces a realistic danger of sustaining a direct injury, or whether the alleged injury is too imaginary or speculative to support subject matter jurisdiction).

▇ "[T]he ripeness inquiry contains both a constitutional and a prudential component." *Portman v. County of Santa Clara,* 995 F.2d 898, 902 (9th Cir.1993). The prudential component requires the court to consider the hardship to the parties of withholding court consideration. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Lockheed acknowledges that a future contribution claim by Moses Lake is not precluded "in the event Moses Lake is required to pay money as a result of an action brought against it by EPA for the costs of implementing the EPA's final remedial action." In the meantime, however, Lockheed says it "should not be required to bear the significant expense of defending itself in this active litigation." Therefore, what Lockheed proposes is that it be granted judgment on all claims asserted against it by Moses Lake, and that it be entirely dismissed as a party to the litigation, but if later, Moses Lake is compelled to incur cleanup costs pursuant to an action brought by EPA against Moses Lake, then Moses Lake can file a new cause of action against Lockheed for contribution. In the interim, however, the captioned matter would proceed against the United States Defendants and Boeing

(against whom contribution claims are also asserted), including discovery (which was recently extended), and likely further litigation about EPA's Final Proposed Plan and EPA's selection of a remedy through a ROD. One thing the court can foresee happening if Lockheed is dismissed from this litigation is that it will selectively seek to re-intervene when it serves its interests (and it would appear that anything related to EPA's selection of a remedy implicates Lockheed's interests). Another thing the court can foresee happening is that if and when Moses Lake is sued by the United States for response costs (a plausible scenario if Lockheed's allegation re the Larson Wastewater Treatment Plant is to be believed), and Moses Lake files a new cause of action against Lockheed for contribution, that new cause of action will logically be consolidated with the captioned matter and it is likely that Lockheed, which will have been out of this litigation for a period of time, will ask for a delay so it can "catch up" on what it has been missing in the interim. It is also possible that Moses Lake will want to "catch up" on its contribution action against Lockheed through the use of formal discovery tools of which it could not avail itself while Lockheed was out of the litigation. In sum, there is hardship to Moses Lake and to the court because Lockheed's desire to wipe its hands clean of the case, for at least awhile, jeopardizes bringing this matter to a conclusion as quickly and efficiently as possible considering the likelihood that sooner or later, Lockheed will be back "in the mix" anyway. Like the court in the *Clear Lake* case, it is this court's intention to do everything possible to insure there is a single liability trial determining the liability of all the parties at one time.[9] The court cer-

---

9. Directing entry of final judgment pursuant to Fed.R.Civ.P. 54(b), as discussed *infra,* is

reflective of that intention.

tainly wants to avoid a situation where there is an initial liability trial involving just the United States and Boeing, and then subsequently, there is a second liability trial involving contribution claims against Lockheed, Boeing and the United States.

Lockheed contends the $3,316.82 to be paid to DOE pursuant to the Consent Decree was not among the response costs for which Moses Lake sought contribution, citing Moses Lake's "First Amended Complaint" filed January 17, 2006, which seeks contribution "if the City is ultimately found liable under 42 U.S.C. § 9607 for any response costs." According to Lockheed, by the terms of the Consent Decree, Moses Lake expressly disclaims any liability. Lockheed notes that Moses Lakes "First Amended Complaint" was filed after DOE filed its lawsuit against Moses Lake in June 2005 and therefore, could have been referred to in the "First Amended Complaint." These arguments really do not go to the "ripeness" of Moses Lake's contribution claim based on the Consent Decree, however, and elevate form over substance. The fact is that DOE did sue Moses Lake. Lockheed does not cite any authority that a formal finding of "liability" on the part of Moses Lake is a prerequisite to Moses Lake asserting a contribution claim. Certainly, § 9613(f)(1) does not say that. Finally, while the "First Amended Complaint" indeed refers to "liability," Moses Lake could ask this court to further amend its complaint if necessary and the court fails to see how that would be prejudicial to Lockheed.

■ Lockheed asserts Moses Lake did not mention the DOE lawsuit when it itemized its damages in response to interrogatories, and Moses Lake's witnesses submitted for deposition on this subject pursuant to Fed.R.Civ.P. 30(b)(6) said nothing about a claim for costs to be paid as a result of the DOE lawsuit. On or about November 29, 2005, this court ordered Moses Lake to answer Lockheed's Second Set of Interrogatories of which Interrogatory No. 1 asked Moses Lake to "Identify each and every REMEDIAL ACTION, REMOVAL ACTION, and/or RESPONSE ACTION that YOU contend YOU have taken at the MOSES LAKE WELLFIELD CONTAMINATION SITE ... for which you seek to recover costs under CERCLA and/or MTCA." When Moses Lake served a response to Interrogatory No. 1 on or about December 12, 2005, it did not identify the DOE lawsuit as a source of response costs for which it sought recovery in the litigation. In December 2005, Moses Lake had not been compelled to do anything by DOE, and as a matter of fact, has still not been compelled to do anything because the Consent Decree has not been entered. Therefore, the court concludes that it was reasonable for Moses Lake to not identify the DOE lawsuit as a source of response costs. Furthermore, what the Consent Decree proposes to do is make Moses Lake reimburse DOE for DOE's costs incurred in overseeing investigation work at the Site performed by Moses Lake. Therefore, DOE is arguably the one who took the remedial action, response action, and/or removal action in question, not Moses Lake.

On or about June 17, 2005, the United States Defendants served Moses Lake with a subpoena duces tecum and a notice of deposition pursuant to Fed.R.Civ.P. 30(b)(6). The subpoena instructed Moses Lake that to the extent Moses Lake sought "any CERCLA response costs not identified in its FTCA administrative claim letter," it should produce someone "to testify to those additional response actions and associated costs." Moses Lake did not produce a copy of the DOE complaint in response to the subpoena, nor did anyone testify about a claim for costs related to the DOE lawsuit. The CERCLA con-

tribution claim is also asserted against the United States and therefore, the DOE lawsuit is something Moses Lake would eventually be expected to disclose to the United States. Again, however, in June 2005, DOE's lawsuit had just been filed and Moses Lake had not been compelled to do anything by DOE, and still has not been compelled to do anything because the Consent Decree has not been entered. Therefore, the court concludes it was reasonable for Moses Lake to not identify the DOE lawsuit as an "additional response action[ ] and associated cost[ ]."

The failure to earlier disclose the existence of the DOE lawsuit is distinguishable from the failure to earlier disclose the work by DSB & A. When discovery was taking place during 2005, Moses Lake had already incurred costs for work performed by DSB & A. On the other hand, Moses Lake has yet to actually be subject to payment of any costs relative to its contribution claim because the Consent Decree has not yet been entered. Therefore, the failure to earlier disclose the existence of the DOE lawsuit as a response cost is "substantially justified," whereas the failure to earlier disclose the DSB & A work is not.

### E. Does Moses Lake Have A "Ripe" MTCA Contribution Claim?

■ MTCA does not have the language found in CERCLA, 42 U.S.C. § 9613(f)(1), which leads to this court's conclusion that Moses Lake has a "ripe" CERCLA contribution claim against Lockheed for costs which Moses Lake may be compelled to incur (as opposed to those which it has voluntarily incurred). Lockheed contends Moses Lake has no MTCA contribution claim until it incurs "remedial action" costs, i.e. is obligated to pay costs pursuant to the Consent Decree. RCW 70.105D.080, however, does not indicate that is a requirement since it states that "[a]n action under this section may be

brought after remedial action costs are incurred ...." (Emphasis added). And, as noted above, because MTCA was modeled on CERCLA, the Washington Supreme Court has found CERCLA case law persuasive in interpreting MTCA. *Asarco*, 145 Wash.2d at 754, 43 P.3d 471.

■ The ripeness doctrine exists "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Asarco*, 145 Wash.2d at 759, 43 P.3d 471, quoting *Abbott Laboratories*, 387 U.S. at 148–49, 87 S.Ct. 1507. At present, there is not a risk of "premature adjudication" of the contribution claims because an initial liability trial is not scheduled until October 2007 and by then, the Consent Decree between DOE and Moses Lake should be entered, and it should be known by then whether there will be any additional costs sought by DOE from Moses Lake, and whether EPA will be seeking costs from Moses Lake in conjunction with EPA's selection of a remedy for the Moses Lake Wellfield Contamination Superfund Site. The "mature seeds" of a contribution dispute between Moses Lake and Lockheed already exist, *Asarco*, 145 Wash.2d at 760, 43 P.3d 471, and by October 2007, the dispute is likely to be in full blossom. Again, Lockheed cannot deny the likelihood of DOE and EPA seeking costs from Moses Lake in light of Lockheed's assertion that Moses Lake's own Larson Wastewater Treatment Plant is "one of only three plausible primary sources of one of the two areas of primary concern." (Reply Br., Ct. Rec. 389 at p. 11).

## III. CONCLUSION

Without substantial justification, Moses Lake violated an obligation to earlier disclose to Lockheed that it was seeking response costs for the DSB & A work. This violation is not harmless and therefore, pursuant to Fed.R.Civ.P. 37(c)(1), Moses Lake is precluded from seeking recovery of those costs against Lockheed under CERCLA, § 9607(a), and under MTCA, RCW 70.105D.080.[10]

Moses Lake does not retain a CERCLA (42 U.S.C. § 9613(g)(2)) or MTCA (RCW 70.105D.080) claim against Lockheed for declaratory relief for future response costs because Lockheed has not been found liable for any past response costs.

Moses Lake has "ripe" CERCLA (42 U.S.C. § 9613(f)(1)) and MTCA (RCW 70.105D.080) contribution claims against Lockheed that should eventually be disposed of on their merits.[11]

Lockheed's "Motion For Clarification, Or, In The Alternative, For Summary Judgment On All Remaining Claims" (Ct. Rec.365) is **DENIED**. Moses Lake's "Motion To Strike The Declaration Of Robert Morrison And Portions Of Lockheed's Reply In Support Of Its Statement Of Material Facts" (Ct.Rec.396) is **DISMISSED** as moot.

**Pursuant to Fed.R.Civ.P. 54(b), this court's October 16, 2006 "Order Granting Lockheed's Motion For Summary Judgment, *Inter Alia* " (Ct.Rec.354), this court's December 7, 2006 "Order Denying Motion To Alter Or Amend Order" (Ct.Rec.405), and this order entered to-day, the District Executive is *DIRECTED* to enter a final judgment for Lockheed against Moses Lake on Moses Lake's CERCLA (42 U.S.C. § 9607(a)) and MTCA (RCW 70.105D.080) cost recovery claims, including such claims related to the cost of DSB & A's work, recovery of which this court has found precluded because of a violation of discovery rules. There is no just reason for delay in entering this final judgment. Entry of final judgment will facilitate an immediate appeal by Moses Lake and insure that in the event the cost recovery claims against Lockheed are reinstated on appeal, liability on those claims will be litigated in a single trial along with liability on the cost recovery claims against the United States Defendants and Boeing, and the contribution claims against the United States Defendants, Boeing and Lockheed.**

**IT IS SO ORDERED.** The District Executive is directed to enter judgment as set forth above and forward copies of the judgment and this order to counsel of record.

---

**10.** Because those are voluntarily incurred costs, they are not recoverable under a contribution theory pursuant to 42 U.S.C. § 9613(f)(1).

**11.** This ruling does not "revive" Moses Lake's claims for past costs which this court has already found to not be recoverable because they are time-barred or were not "necessary." Moses Lake's contribution claims are "ripe" with regard to potential recovery of future costs. At this juncture, it is not apparent that the CERCLA (42 U.S.C. § 9613(g)(3)) or MTCA (RCW 70.105D.080) statutes of limitation bar Moses Lake's contribution claims, although this is not intended to constitute a ruling upon that issue.